E. CLIFTON SUTTON, Appellant, v. BOARD OF ADJUSTMENT OF THE CITY OF WILMINGTON, DELAWARE, Appellee, PAUL D. BUCKLEY, JR., Intervenor.

(*July* 27, 1962.)

STIFTEL, J., sitting.

*Thomas S. Lodge* (of Connolly, Bove and Lodge) for Appellant.

*Joseph T. Walsh* for Intervenor.

Superior Court for New Castle County, No. 707, Civil Action, 1961.

STIFTEL, Judge.

This is an appeal pursuant to 22 *Del. C.* § 328 from a decision of the Board of Adjustment of the City of Wilmington on April 11, 1961. The Board reversed the decision of the Building Inspector and granted the Intervenor, Paul D. Buckley, Jr., a variance under § 14(d) of the City Building Zone Ordinance, allowing Buckley to change the use of his premises at 1200 West Sixth Street in Wilmington from a dry cleaning pick-up shop to a liquor package store. The Board previously on December 15, 1960, had denied the application of Buckley's prospective lessee, John J. Perillo, because he erroneously treated his request as one for a change of occupancy rather than for a variance under § 14 of the Building Zone Ordinance and therefore did not submit evidence to support a finding of "unecessary hardship" as required by that section. The Board also questioned his standing to make the application since he was only the prospective lessee of the premises, and not the owner. The Appellant is one of a number of residents in the neighborhood who have objected to the proposed change in use.

Hearings were held before the Board on both applications.

The property in question is located in an area zoned Residence "C" District. The premises were non-conforming as to both construction and use at the time the City Building Zone Ordinance was first enacted in 1924 and have been put to a non-conforming use since that time. Prior to 1924 and until approximately five years ago, a retail grocery business was operated on the premises. The grocery was followed by a notions store for about three years and then by the present dry cleaning pick-up estab-

lishment. The first floor of the building is leased for the business and the second floor rented as an apartment. The Building Inspector informed the Board that neither an occupancy permit nor a variance was applied for in the case of either the notions or the dry cleaning business.

The Appellant contends that the Board of Adjustment was in error in making the following findings: (1) that there was not an "abandonment" within the meaning of Section 2 of the Building Zone Ordinance, (2) that a non-conforming use had been continuously maintained since the enactment of the original Zoning Ordinance, (3) that the Petitioner would suffer unnecessary hardship if his petition for a variance were denied, and (4) that a liquor package store would not be more detrimental to the neighborhood.

Section 2 of the City Building Zone Ordinance permits the continuance of any use of property existing at the time the Ordinance was enacted even though such use does not conform to the requirements of the Ordinance, but provides that "any non-conforming use which shall have been abandoned for a period exceeding two years shall not thereafter be resumed."

Section 14 provides as follows:

"* * *

"Any person aggrieved or affected by any decision of the Building Inspector may appeal from such decision to the Board of Adjustment, as provided by law and by the rules of such board. Notice of appeal shall be given in writing to the Building Inspector and to the board, within such period as the board may by general regulation prescribe. Such board may, in particular cases where unnecessary hardship would otherwise result, authorize vari-

ance from the terms of this ordinance in harmony with its general purpose and intent, and with the public interest; and for these purposes and within these limitations, in accordance with powers already enumerated or granted it by law, shall have the following authority:

"* * *

"d. To authorize the change of non-conforming use to another non-conforming use which is not more detrimental to the neighborhood; or the alteration of a non-conforming building; but not the extension of a non-conforming building in connection with a change of use, unless the extension itself be conforming in its use and construction;

"* * *" [1]

Under Section 2, the non-conforming uses permitted to be continued are the *specific* non-conforming uses existing at the time the Ordinance was enacted. *Auditorium, Inc. v. Board of Adjustment,* 8 Terry 373, 91 A.2d 528. A change from an original non-conforming use to another non-conforming use can be legally effected only by complying with the requirements of Section 14(d) and obtaining a variance under that section.

The sole question presented on this appeal is whether or not the Board of Adjustment properly granted a variance in this case under Sec. 14(d).

---

[1] Although not in effect at the time this action began and therefore not part of the law applicable to the case, it is interesting to note the change made in Sec. 14(d) in the revised Building Zone Ordinance approved by the Mayor on March 8, 1962. The successor to § 14(d) reads as follows:

"134.31. Approve the change of a nonconforming use to another nonconforming use *less detrimental* to the neighborhood* * *." (Italics added.)

Under § 14(d), the applicant was required to establish the following: (1) that he would suffer "unnecessary hardship" if the variance were not granted, and (2) that the proposed non-conforming use would be in harmony with the public interest and would not be more detrimental to the neighborhood than the existing one. See *Searles v. Darling*, 7 Terry 263, 83 A.2d 96.

"Unnecessary hardship" was defined in the case of *Homan v. Lynch*, 1 Storey 433, 147 A.2d 650, 654:

"An all-embracing list of circumstances justifying a finding of 'unnecessary hardship' in zoning law is seldom attempted. But the basic prerequisites to such a finding are well settled. It must appear '(1) that the property cannot yield a reasonable return when used for a permitted purpose; (2) that the plight of the owner is due to unique circumstances; and (3) that the use authorized will not alter the essential character of the locality.'"
See, also, *Otto v. Steinhilber*, 282 N.Y. 71, 24 N.E.2d 851, 853.

It is conceded by Appellant that the property cannot yield a reasonable return when used for a permitted purpose because the first floor of the building has insufficient area to be converted into an apartment and conform to the requirements of the ordinance. In fact, the small lot (15 feet by 67 feet, 1005 square feet) would not meet either the minimum width or minimum area requirements for residential property under the Building Code. In any event, Mr. Buckley would not be economically justified in expending the $2,100 on this property, almost one-fourth its total appraised value of $9,000, estimated to be necessary to convert it either into a single residence or into apartments because it would not yield a satisfactory increase in rent to offset the added investment. Mr. Buckley also testified that the $40 monthly rent he re-

ceives from the dry cleaning outlet hardly covers fuel expenses. It is clear that economic hardship does exist in this case.

 Mrs. Buckley inherited a one-half interest in the property from relatives, and the Buckleys later bought the other half interest. This circumstance and, in addition, those discussed in the preceding paragraph, are sufficiently special to be judged "unique" for the purposes of the second requirement laid down in the Homan case.

Under the conditions specified in the Homan case, it is also necessary to decide whether the requested variance would alter the essential character of the neighborhood. This requirement is similar to and no more stringent than the requirement of Sec. 14(d) that the proposed new use will not be more detrimental to the neighborhood.

With respect to this question, it must be recognized that the proper sale and use of liquor are under the control of the State Liquor Commission. Neither the Board nor the Court is concerned with the type of business operated on the premises as such, but only with whether the proposed use is permissible under zoning regulations.

The Ordinance does not place non-conforming uses into general use categories such as commercial, industrial, etc., as do many zoning ordinances elsewhere, which could serve as a basis for determining what changes would be permissible. Nor does it attempt to set forth conditions to be considered in determining whether a change is in harmony with the public interest and "not more detrimental to the neighborhood", as required by Sec. 14.

In *Stern v. Zoning Board of Appeals of City of Norwich*, 140 Conn. 241, 99 A.2d 130, the Court had before it a city zoning ordinance which allowed a non-conforming use to be changed to a "similar use". The city man-

ager had granted a certificate of occupancy permitting the applicant to change from a motor vehicle garage and repair shop to a retail grocery supermarket, and the basic question on appeal was whether the proposed new non-conforming use is "similar" to the former non-conforming use so as to justify permitting the change. The Court discussed the lack of prescribed standards in the ordinance for ascertaining what constitutes similarity between a changed use and the use from which it was changed and held as follows:

"The facts of this case show that the matter was one peculiarly within the knowledge of the local board. A court should be cautious about disturbing the decision of a local board where it appears that an honest judgment has been reasonably and fairly exercised. * * * Upon the record we cannot say that the board [affirming the action of the city manager] has acted arbitrarily or illegally or has abused its discretion."

■ Factors to be considered in determining whether or not a change would be more detrimental are the effect on real estate values in the neighborhood by the operation of such business and matters affecting the welfare of the community as a whole, rather than the personal preferences of some of the residents. The Board could not find evidence that the sale of packaged liquor, not to be consumed on the premises, would be more detrimental than the sale of any other goods bought, stored and resold for a profit. There is no significant difference in effect between the operation of a service such as the collection and distribution of clothes for dry cleaning and the operation of a retail business except that in one the patrons pay for a service whereas in the other they pay for goods.

■ In reviewing decisions of administrative agen-

cies, the appellate court is bound by the agency's findings of fact if supported by "substantial evidence" in the record and is free to review questions of law. *Searles v. Darling,* supra; Appeal of Blackstone, 8 W.W.Harr. 230, 190 A. 597. I find that there is "substantial evidence" in the record to support the Board's factual findings that there would be "unnecessary hardship" if the variance is not granted· and that the operation of a liquor package store on these premises would not conflict with the public interest and would not be more detrimental to the neighborhood than a dry cleaning pick-up store. Appellant had the burden to show that the Board abused its discretion. The record discloses no abuse.

Appellant argues that the owner's failure to obtain authorization for the two uses intervening between the original use as a grocery store and the proposed new use as a liquor package store constitutes in legal effect an abandonment of use within the meaning of Section 2 of the Ordinance so as to preclude the granting of a variance to permit a change of non-conforming use. Appellant here relies on *Auditorium, Inc. v. Board of Adjustment,* 8 Terry 373, 91 A.2d 528. In that case, the property in question was used as a sporting events arena at the time the Zoning Ordinance was enacted and was later used as a furniture showroom. After the latter use had been in effect for more than two years, the owner of the premises sought to return to the former use for the exhibition of sporting events. Our Supreme Court held that since the use existing at the time of enactment of the Ordinance had been abandoned for more than two years, it could not be resumed under the express prohibition of Section 2.

The prohibition exists, under Section 2, where there has been a change from a non-conforming use existing at the time the Ordinance was adopted to another non-con-

forming use for a period of more than two years and the owner of the property wishes to resume the former use. This is not the case here. The owner of the premises involved here wishes to change the use of the building to a retail business different from that existing when the Zoning Ordinance was passed and different from that for which the building is presently being used. The question of resuming its former use as a grocery store is not involved. Thus, the owner's application for a variance is governed solely by Section 14(d) of the Ordinance and the prohibition as to resumption of former use is not involved.

The question remains as to whether the lack of authorization for the intermediate uses constitutes an abandonment, in its generally accepted legal meaning, under Section 14(d) and precludes a change to another non-conforming use under that section. The ordinance does not deal specifically with this problem. Assuming, without deciding, that abandonment bars a change from one non-conforming use to another non-conforming use under Section 14(d), the appellant has not established any intention to abandon. The Board had before it this problem and decided that a non-conforming use had been continuously maintained in the building since a time prior to the enactment of the original Zoning Ordinance. At any rate, the owner's failure to obtain authorization for the intermediate uses is dealt with under Section 17 of the Zoning Ordinance, which provides a remedy in the form of a fine for failure to comply with the requirements of the Ordinance in prosecutions in the Municipal Court.

Judgment affirmed.