PURITAN-GREENFIELD IMPROVEMENT
ASSOCIATION *v.* LEO.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATUTES—ZONING
   ORDINANCES.
   Whether the term *special conditions* as used in provision of
   home-rule city's zoning ordinance authorizing variance of the
   terms of the ordinance by the board of zoning appeals modi-
   fies the meaning of *"practical difficulties or unnecessary hard-
   ship"*, as used in enabling act allowing variances, and whether
   or not such a city may change the statutory standard, are
   not considered necessary on appeal from order of circuit
   court based on finding that variance should not have been
   allowed defendant property owner (CLS 1961, § 125.585;
   Detroit Zoning Ordinance No 171-D).

2. SAME—ZONING—SUPERINTENDING CONTROL.
   Circuit court review of action by a board of zoning appeals
   is by means of application for writ of superintending control,
   which replaces certiorari (PA 1961, No 236, § 615; GCR
   1963, 711).

3. SAME—ZONING—SCOPE OF REVIEW OF ADMINISTRATIVE AGENCY.
   Minimum constitutional standard establishes the scope of review
   of action by a board of zoning appeals, requiring that, on

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 203.
[2] 58 Am Jur, Zoning § 229 *et seq.*
[3] 58 Am Jur, Zoning §§ 194, 195.
[4] 58 Am Jur, Zoning §§ 139–141.
[5–10] 58 Am Jur, Zoning § 194 *et seq.*
[11] 58 Am Jur, Zoning § 43.
[12] 58 Am Jur, Zoning §§ 141, 142.
[13] 58 Am Jur, Zoning § 32 *et seq.*
[14, 15, 17] 58 Am Jur, Zoning §§ 139, 201, 203, **204.**
[16, 17] 58 Am Jur, Zoning §§ 223, 224.
[18] 58 Am Jur, Zoning § 196 *et seq.*
[19] 58 Am Jur, Zoning § 229 *et seq.*

such review, courts determine whether the findings of the board and its order are authorized by law and whether they are supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

4. MUNICIPAL CORPORATIONS—ZONING—VARIANCE—REASONABLE RETURN—REASONABLE USE.

The ability of a property owner to make "reasonable use" of his property under an existing zoning ordinance provision will ordinarily turn on whether a reasonable return can be derived from the property as so zoned, but the question of reasonable use thereof cannot be resolved solely on the basis of the return that can be derived from the property.

5. SAME—ZONING ORDINANCE—VARIANCE—CONFISCATION.

Allowance of a variance to provisions of a zoning ordinance requires a showing that the existing zoning amounts to virtual confiscation or disadvantage so great as to deprive the property owner of all reasonable use of the property; hence, variances should be sparingly granted (Detroit Zoning Ordinance No 171-D, § 20.7).

6. SAME—ZONING—VARIANCE—REASONABLE USE.

The mere fact that property would be worth more for some use other than that allowed under existing zoning ordinance or statute does not authorize the granting of a variance (CLS 1961, § 125.585; Detroit Zoning Ordinance No 171-D, § 20.7).

7. SAME—ZONING ORDINANCE—AMENDMENT—VARIANCE.

A board of zoning appeals, being without legislative power, may not, in the guise of a variance, amend the zoning ordinance or disregard its provisions (Detroit Zoning Ordinance No 171-D, § 20.7).

8. SAME—ZONING ORDINANCE—HARDSHIP—VARIANCE.

Difficulties or hardships shared with others go to the reasonableness of a municipal zoning ordinance generally and will not support a variance as to a single parcel upon the ground of hardship (Detroit Zoning Ordinance No 171-D, § 20.7).

9. SAME—ZONING ORDINANCE—VARIANCE.

A use variance under a municipal zoning ordinance may not alter the essential character of the locality, be contrary to the public interest, or inconsistent with the spirit of the ordinance (Detroit Zoning Ordinance No 171-D, § 20.7).

10. SAME—ZONING—VARIANCES.

 A use variance may not be granted to a property owner by a board of zoning appeals unless such board can find, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with existing zoning.

11. SAME—ZONING ORDINANCE—PROPERTY IMPROVEMENTS.

 The zoning of property pursuant to a municipal ordinance includes the improvements made thereon (Detroit Zoning Ordinance No 171-D, § 20.7).

12. SAME—ZONING—RESIDENCE—VARIANCE—VALUE—REASONABLE USE.

 Testimony that a single-family residence and lot could not be sold for $38,500 in a neighborhood where houses generally sell for substantially less does not constitute any evidence that the property could not continue reasonably to be used as a single-family residence.

13. SAME—ZONING—VARIANCE—HEAVY TRAFFIC—COMMERCIAL DEVELOPMENT.

 Heavy traffic is typical of innumerable admittedly residential streets and adjacency to gasoline stations or other commercial developments characteristic of the end of a business or commercial district and the commencement of a zoning of a residential district, which districts must begin and end somewhere; hence, variance on the ground of hardship because of such traffic was not properly granted (Detroit Zoning Ordinance No 171-D, § 20.7).

14. SAME—ZONING—VARIANCE—UNNECESSARY HARDSHIP.

 The power of a board of zoning appeals to grant a use variance for "unnecessary hardship" peculiar to the property must be determined by objective standards or the granting of one use variance will inevitably beget or validate another claim of hardship and justify still another variance.

15. SAME—ZONING—VARIANCE—UNNECESSARY HARDSHIP.

 Review of grant of variance from use allowed by municipal zoning ordinance on grounds of unnecessary hardship is not determined by whether the board of zoning appeals had acted reasonably, but whether, on the proofs presented and findings made by the board, it could grant a variance on such basis (Detroit Zoning Ordinance No 171-D, § 20.7).

16. Same—Zoning—Variance—Review—Evidence.
    Substantial evidence supporting findings made by a board of
    zoning appeals requires their affirmance on review.

17. Same—Zoning—Variance—Review—Evidence.
    The grant of a variance by a board of zoning appeals on the
    basis of unnecessary hardship must be reversed, where there
    is insufficient evidence to support the finding made by the
    board of zoning appeals in granting such variance.

18. Same—Zoning—Variance—Hardship.
    Claims that a municipal board of zoning appeals has no author-
    ity to grant a use variance and that "hardship" involved had
    been self-created held, without merit (Detroit Zoning Ordi-
    nance No 171-D, § 20.7).

19. Same—Zoning—Variance—Evidence—Findings of Fact.
    Judgment of circuit court, setting aside use variance granted
    by the board of zoning appeals of home-rule city, which
    variance authorized defendant to use his property, zoned as
    single-family residential, as a medical and dental clinic held,
    proper, where such action was based upon the board's findings
    that the residential zoning resulted in "unnecessary hardship"
    to defendant because of heavy traffic in the area, closeness
    of the property to a business section, and fact that the
    property could not be sold for $38,500 in a neighborhood
    where houses generally sold for substantially less, there being
    no evidence whatsoever concerning the continued use of the
    property as a single-family residence, since a variance may
    not be granted on the basis of "unnecessary hardship" unless
    there is evidence that the property for which the variance
    is sought cannot be put to reasonable use as originally zoned
    (Detroit Zoning Ordinance, No 171-D, § 20.7).

Appeal from Wayne; Kaufman (Charles), J.
Submitted Division 1 December 13, 1966, at Detroit.
(Docket No. 841.)   Decided October 16, 1967.

Puritan-Greenfield Improvement Association, a
nonprofit Michigan corporation, filed its complaint
against John L. Leo, the Board of Zoning Appeals
of the City of Detroit, and the Department of Build-
ing and Safety Engineering of the City of Detroit,
seeking an order nullifying a zoning variance

granted to defendant Leo. Judgment for plaintiff. Defendant appeals. Affirmed.

*Armstrong, Helm, Marshall & Schumann (Neill T. Peters, of counsel), for plaintiff.*

*Joseph M. Weiss, for defendant Leo.*

LEVIN, J. Defendant-appellant John L. Leo claims the circuit judge erred in setting aside a use variance granted by the Detroit board of zoning appeals.

Leo owns a one-story, one-family dwelling[1] at the northwest corner of Puritan avenue and Prest avenue, located in the northwest section of Detroit in an R–1 (single-family residence) zoning district. On application and after hearing, the board granted Leo[2] a variance to permit the use of the property as a dental and medical clinic (an RM–4 use) and to use the side yard for off-street parking on certain conditions.

The order of the board states that immediately to the west of the westerly boundary of Leo's property is a gasoline service station (at the corner of Puritan and Greenfield); that there. was testimony Leo had not received any offers from residence-use buyers during the period of over a year the property had been listed and offered for sale; and, in the event a variance was granted, it was intended to preserve the present exterior of the building without signifi-

---

[1] The structure is 50 feet by 58 feet on a parcel of land 120 feet wide by 100 feet deep.

[2] Defendants Henry Small, a medical doctor, and Abe S. Pearlman, a dentist (proposed purchasers of the property), did not appear in the circuit court proceedings. Defendants board of zoning appeals, its members, and the department of buildings and safety engineering and its commissioner appeared in the circuit court. Leo is the only defendant appealing here. None of the other defendants filed briefs on this appeal.

cant alteration so that it would continue to appear to be a one-family dwelling.

The appeal board's dominant finding was:

"That the board found unnecessary hardship and[3] practical difficulty because of the heavy traffic[4] and the closeness to the business section immediately to the west."

. The board also found that the proposed use would not alter the essential character of the neighborhood, would not be injurious to the contiguous property, would not be detrimental to the surrounding neighborhood, and would not depreciate property values.

Plaintiff-appellee, Puritan-Greenfield Improvement Association, filed a complaint with the circuit court which was treated by the court as one for superintending control.[5] The matter was heard by the circuit judge on the record made before the board. The circuit judge reversed the decision of the board, stating *inter alia* that it had not been shown the land could not yield a reasonable return or be put to a proper economic use if used only for a purpose allowed by existing zoning and that such showing of hardship as had been made was of "self-created" hardship attributable to the character of the structure thereon.

The applicable enabling act provides for a board of zoning appeals authorized to grant a variance upon a showing of practical difficulties or unnecessary hardship.[6] The Detroit ordinance requires

---

3 Both the enabling act (PA 1921, No 207, as amended [CLS 1961, § 125.585(d), Stat Ann 1958 Rev § 5.2935(d)]) and the zoning ordinance of the city of Detroit, Ordinance No 171-D, § 20.7, 4th paragraph, use the disjunctive "or"—not the conjunctive "and".

4 The board earlier found "that Puritan avenue is a highly traversed east-and-west street."

5 GCR 1963, 711; revised judicature act, PA 1961, No 236, § 615 (CLS 1961, § 600.615, Stat Ann 1962 Rev § 27A.615).

6 PA 1921 No 207 (CLS 1961, § 125.585, Stat Ann 1958 Rev § 5.2935). See *Dawley* v. *Ingham Circuit Judge* (1928), 242 **Mich**

evidence of special conditions[7] and unnecessary hardship or practical difficulties.[8]

The enabling act specifies neither a particular procedure for obtaining review of board of zoning appeals' action nor the scope of review. Review is obtained by means of an application for superintending control (see footnote 5) which replaces certiorari. The minimum constitutional standard establishes the scope of review. The circuit judge and we are required by the Michigan Constitution to determine whether the findings of the board and its order are authorized by law and whether they are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

Although there has been a great deal of judicial effort expended in Michigan in considering challenges to the reasonableness or constitutionality of zoning as applied to individual properties, we find no Michigan appellate decisions construing the

247, holding that a home-rule city may avail itself of this enabling legislation.

[7] The Detroit ordinance (Ordinance No 171-D) was not adopted until 1940. The term "special conditions" appears in the standard State zoning enabling act (see footnote 11).

In *Ackerman* v. *Board of Commissioners of Town of Belleville* (1948), 1 NJ Super 69 (62 A2d 476, 479), the court stated that the term "special conditions" refers to "circumstances uniquely touching his [the applicant's] land as distinguished from conditions that affect the whole neighborhood." As will appear, without regard to whether the term "special conditions" is used, courts generally have ruled that a variance in the use of land may only be granted under the circumstances so described in *Ackerman*. We find it unnecessary to consider in this case whether the term "special conditions" modifies the meaning of "practical difficulties or unnecessary hardship" or whether the city of Detroit may change the governing standard set forth in the applicable enabling act.

[8] Counsel for the parties are in agreement that the only provision of the Detroit ordinance here applicable is the following:

"Where owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardship or involve practical difficulties, the board shall have power upon appeal in specific cases to authorize such variance or modification of the terms of this ordinance as will not be contrary to the public interest and so that the spirit of this ordinance shall be observed, public safety secured and substantial justice done." Ordinance No 171-D, § 20.7, of the city of Detroit.

words "unnecessary hardship or practical difficulties."[9]

. The first modern zoning regulations were adopted by the city of New York and the phrase "practical difficulties or unnecessary hardship" was fashioned as the applicable standard to guide New York's board of appeals in considering applications for variances.[10] A comparison of the relevant language of the applicable Michigan enabling act with that of the original New York city legislation shows that the Michigan provision authorizing the vesting in a board of zoning appeals the authority to grant variances parallels the corresponding New York City provision.

. It appears that most State enabling acts, and ordinances based thereon, use "unnecessary hardship" as the governing standard.[11] In those States (like Michigan and New York) where the applicable stand-

---

[9] We agree with the appellant (Leo) that we would not be justified in concluding without independent analysis that the Supreme Court's quotation of the New York standards in *Tireman-Joy-Chicago Improvement Association* v. *Chernick* (1960), 361 Mich 211, means that such standards were then adopted for Michigan. This is also the view of one author (Crawford, Michigan Zoning and Planning, § 6.06, pp 6-14). We have, therefore, regarded this as a case of first impression in Michigan.

[10] For a history and the text of the New York City legislation, see Bassett, Zoning (1940), p 133 *et seq.*

[11] A standard State zoning enabling act (recommended in the early 1920's by the United States Department of Commerce) authorizing variances, "where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship", has been adopted literally or in major parts by most States. *City of San Angelo* v. *Boehme Bakery* (1945), 144 Tex 281 (190 SW2d 67, 69). The Standard State Zoning Enabling Act, as revised to 1926, is reprinted in 3 Rathkopf, The Law of Zoning and Planning, at pp 100, 101.

A survey of zoning laws and ordinances adopted during 1928 and 1929, prepared by Norman L. Knauss of the Division of Building and Housing of the Bureau of Standards of the United States Department of Commerce in 1930 (at page 2) that 35 states had "used" the standard act in 54 zoning laws. See, also, Anderson, Planning, Zoning and Subdivision: a Summary of Statutory Law in the 50 States, New York State Federation of Official Planning Organizations (1966), and Cunningham, Land-Use Control—The State and Local Programs (1965), 50 Iowa Law Rev pp 367, 368.

ard is "unnecessary hardship *or* practical difficulties," the phrase "practical difficulties" has been regarded as applicable only when an area or a dimension variance is sought, and in determining whether a use variance will be granted the decisive words are "unnecessary hardship."[12] In the light of this history, we have turned for guidance to decisions of other States applying the "unnecessary hardship" standard.

A text writer, Rathkopf, states that courts have held, variously, that a property owner seeking a variance on the ground of "unnecessary hardship" must show credible proof that the property will not yield a reasonable return if used only for a purpose allowed by the ordinance or must establish that the zoning gives rise to hardship amounting to virtual confiscation or the disadvantage must be so great as to deprive the owner of all reasonable use of the property. He concedes that the showing required "is substantially equivalent to that which would warrant a court in declaring the ordinance confiscatory, unreasonable, and unconstitutional in its application to the property involved." 2 Rathkopf, The Law of Zoning and Planning, p 45–14.

---

[12] The term "practical difficulties" has not been as widely used as the term "unnecessary hardship", perhaps because the term "practical difficulties" was not used in the standard act. See Anderson, Planning, Zoning and Subdivision, *op. cit.*, footnote 15.

"Practical difficulties * * * play little part in so-called 'use', or exception from zoning limitation, variances," *Bellamy* v. *Board of Appeals of City of Rochester* (1962), 32 Misc 2d 520 (223 NYS2d 1017, 1020).

See, also, *Indian Village Manor Company* v. *City of Detroit* (1967), 5 Mich App 679, relying on *Village of Bronxville* v. *Francis*, 1 App Div 2d 236 (150 NYS2d 906), modifying 206 Misc 339 (134 NYS2d 59), and affirmed 1 NY2d 839 (153 NYS2d 220); *Hoffman* v. *Harris* (1966), 17 NY2d 138 (216 NE2d 326, 330); *Alumni Control Board, Alpha Psi Chapter, Delta Sigma Phi Fraternity, Inc.,* v. *City of Lincoln* (1965), 179 Neb 194 (137 NW2d 800, 802); *Loyola Federal Savings & Loan Association* v. *Buschman* (1961), 227 Md 243 (176 A2d 355, 358); *Brown* v. *Beuc* (Mo App, 1964), 384 SW2d 845, 852.

These principles also find expression in the frequently stated generalizations that variances should be sparingly granted,[13] that it is not sufficient to show that the property would be worth more or could be more profitably employed if the restrictions were varied to permit another use,[14] and that the board of appeals, being without legislative power, may not in the guise of a variance amend the zoning ordinance or disregard its provisions.[15]

The judicial attitudes so expressed could well have been influenced by the early history of the boards of zoning appeal and the need to declare more precise standards than the somewhat nebulous "unnecessary hardship."[16] When zoning was in its infancy it was thought by some that without a board of zoning appeals the individual declarations of zoning ordinance invalidity would be so numerous it would become necessary to declare the legislation void as a whole and, thus, "the chief value of the board of appeals in zoning is in protecting the ordinance from attacks upon its constitutionality."[17] That view of the purpose of the board of zoning appeals has been said to require a standard related to the reasonableness of the zoning:

[13] 101 CJS, Zoning, § 286, p 1057; 2 Yokley, Zoning Law and Practice (3d ed), § 15–14; 1 Metzenbaum, Law of Zoning (2d ed), p 774.

[14] 2 Rathkopf, *op. cit.*, p 45–9; 101 CJS, Zoning, § 293, p 1074; 2 Yokley, *op. cit.*, § 15–12; 1 Antieau, Municipal Corporation Law, § 7.60; Metzenbaum, *op. cit.*, pp 769, 795.

[15] 2 Rathkopf, *op. cit.*, ch 39; 2 Yokley, *op. cit.*, § 15–13. See, also, 1 Antieau, *op. cit.*, § 7.58, n 7 and 8.

[16] The delegation of authority to grant variances upon proof of unnecessary hardship or practical difficulties has been challenged for vagueness, but most courts have approved delegation in such terms. *Tireman-Joy-Chicago Improvement Association* v. *Chernick, supra.* Compare *Osius* v. *City of St. Clair Shores* (1956) 344 Mich 693, and *Mitchell* v. *Grewal* (1953), 338 Mich 81, 87, concerning exceptions as distinguished from variances.

[17] Baker, Legal Aspects of Zoning, University of Chicago Press (1927), pp 79, 81. See, also, Metzenbaum, *op. cit.*, at p 677 and Cunningham, Land-Use Control—The State and Local Programs, 50 Iowa Law Rev 367, 394.

"The hardship contemplated in this legislation has constitutional overtones, and it is the purpose of the variance to immunize zoning legislation against attack on the ground that it may in some instances operate to effect a taking of property without just compensation." *R-N-R. Associates* v. *Zoning Board of Review of the City of Providence* (1965), 100 RI 7 (210 A2d 653, 654).[18]

It has been said that the function of a board of zoning appeals is to protect the community against usable land remaining idle and it is that purpose which gives definition to "unnecessary hardship."

"Since the main purpose of allowing variances is to prevent land from being rendered useless, 'unnecessary hardship' can best be defined as a situation where in the absence of a variance no feasible use can be made of the land." 74 Harv Law Rev, p 1401; quoted in *State* v. *Milwaukee Board of Appeals* (1965), 27 Wis 2d 154 (133 NW2d 795, 799).

Whatever the rationale may be, it has been held that a variance should not be granted until it appears the property cannot be put reasonably to a conforming use (*Brackett* v. *Board of Appeal of Building Department of City of Boston* [1942], 311 Mass 52 [39 NE2d 956, 961]; *Stolz* v. *Ellenstein* [1951], 7 NJ 291 [81 A2d 476, 478]); or the application of the ordinance is so unreasonable as to constitute an arbitrary and capricious interference with the basic

[18] See, also, *Peterson* v. *Vasak* (1956), 162 Neb 498 (76 NW2d 420, 426); *National Land & Investment Company* v. *Kohn* (1965), 419 Pa 504 (215 A2d 597, 602); *Scaduto* v. *Town of Bloomfield* (1941), 127 NJL 1 (20 A2d 649, 650); *Thomas* v. *Board of Standards & Appeals of City of New York* (1942), 263 App Div 352 (33 NYS2d 219, 230); *Florentine* v. *Darien* (1955), 142 Conn 415 (115 A2d 328, 332); *Reynolds* v. *Zoning Board of Review of Town of Lincoln* (1963), 96 RI 340 (191 A2d 350, 352); Mandelker, Delegation of Power and Function in Zoning Administration (1963), Wash U L Quar, pp 60, 63; Bryden, Zoning: Rigid, Flexible, or Fluid? (1967), 44 Journal of Urban Law—University of Detroit 287, 295. Compare *Gorieb* v. *Fox* (1927), 274 US 603 (47 S Ct 675, 71 L ed 1228).

right of private property (*Stolz* v. *Ellenstein, supra*); or that the property cannot be used for a conforming purpose (*Brown* v. *Beuc, supra,* at p 852; similarly *C. & C., Incorporated,* v. *Semple* [1966], 207 Va 438 [150 SE2d 536, 539]; *Searles* v. *Darling* [1951], 46 Del 263 [83 A2d 96, 100]).

"An unnecessary hardship exists when all the relevant factors taken together convince that the plight of the location concerned is unique in that it cannot be put to a conforming use because of the limitations imposed upon the property by reason of its classification in a specific zone." *Peterson* v. *Vasak, supra,* at p 426.

The authors of a number of scholarly studies appear to agree that an applicant desiring a variance must show

"(a) that if he complies with the provisions of the ordinance, he can secure no reasonable return from, or make no reasonable use of, his property; (b) that the hardship results from the application of the ordinance to his property; (c) that the hardship of which he complains is suffered by his property directly, and not merely by others; (d) that the hardship is not the result of his own actions; and (e) that the hardship is peculiar to the property of the applicant." Green, The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance (1951), 29 NC Law Rev 245, 249.[19]

[19] In substantially the same language, these principles are stated in Reps, Discretionary Powers of the Board of Zoning Appeals (1955), 20 Law and Contemporary Problems 280, 283–288, and in Pooley, Planning and Zoning in the United States, Michigan Legal Publications, Ann Arbor, Michigan (1961), pp 55–59. Fundamentally, the same points are also made in a comment entitled Zoning Variances, 74 Harv Law Rev (1961), p 1396, and in Arnebergh, The Functions and Duties of a Board of Zoning Adjustment, 1 Inst on Planning and Zoning (1960), pp 109, 116–123, Southwestern Legal Foundation, Dallas, Texas; and in Strong, Powers of a Zoning Board of Adjustment, 2 Inst on Planning and Zoning (1961), pp 69, 84–94, Southwestern Legal Foundation, Dallas, Texas, and in Bryden, *op. cit.,* pp 304 *et seq.,* and in 2 Rathkopf, *op. cit.* p 45–5.

The New York Court of Appeals has stated:

"Before the board may exercise its discretion and grant a [use] variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality." *Otto* v. *Steinhilber* (1939), 282 NY 71 (24 NE2d 851).

The *Otto* definition has been adopted by other courts. *Deardorf* v. *Fort Dodge Board of Adjustment of Planning and Zoning Commission* (1962), 254 Iowa 380 (118 NW2d 78, 81) (the Iowa court referred to the foregoing New York court of appeals statement as "perhaps the most precise definition we have found"). See, also, *Sutton* v. *Board of Adjustment of City of Wilmington* (Del, 1962), 200 A2d 835, 838.

We find overwhelming support for the proposition —expressed in *Otto*—that the hardship must be unique or peculiar to the property for which the variance is sought.

"Difficulties or hardships shared with others go to the reasonableness of the ordinance generally and will not support a variance as to one parcel upon the ground of hardship." 2 Rathkopf, *op. cit.,* p 45–3.[20]

[20] See, also, *Elwyn* v. *City of Miami* (Fla, 1959), 113 So 2d 849, 851 (the difficulties or hardships relied on must be unique to the parcel involved in the application); *Brown* v. *Beuc, supra,* at p 853.

To similar effect see 58 Am Jur, Zoning, § 204; 101 CJS, Zoning, § 291; 8 McQuillin, Municipal Corporations (1965 Rev), § 25.167, n 51–60, and § 25.168; Yokley, *op. cit.* (2d ed 1953), §§ 138, 139; Metzenbaum, *op. cit.,* 770.

Under these definitions even if the land cannot yield a reasonable return if used only for a purpose permitted by existing zoning, a use variance may not be granted unless the landowner's plight is due to unique circumstances and not to general conditions in the neighborhood that may reflect the unreasonableness of the zoning.

This limitation on the board's powers is related to the third limitation expressed in *Otto*—that a use authorized by a variance shall not alter the essential character of the locality. In this connection we note that the Detroit ordinance prohibits a variance that would be contrary to the public interest or inconsistent with the spirit of the ordinance. (See footnote 8.)

"If it [the hardship] affects a whole area, then his remedy lies in seeking an amendment to the zoning ordinance. This is true even where the applicant's property is situated in an area where none of the properties can be put to any reasonable beneficial use owing to zoning restrictions. It is not for the board in these circumstances to bestow liberties upon one single member of this group of property holders. The legislature must be the body to make decisions of this sort even in cases where the most severe hardship can be shown." Pooley, Planning and Zoning in the United States, *op. cit.*, at p 59.

The Rhode Island supreme court has stated that once the right to a variance becomes established the only matter remaining is the scope and character of the relief to be granted, which must be effectuated in a manner consistent with the public interest *(R-N-R. Associates v. Zoning Board of Review of the City of Providence, supra,* at p 655); but if a considerable number of property owners are similarly affected, it might well appear contrary to the spirit of the ordinance to grant relief to one while denying it to another, and in such a case it has been

said that relief should be withheld until it can be decreed by the governing body or, if necessary, by the courts.[21]

While we have discussed the foregoing statements that the hardship must be unique and that there are limitations on a zoning appeal board's power to frame a remedy when the hardship is shared with others—such statements being so inextricably a part of judicial, text, and scholarly definitions of "unnecessary hardship" that the construction of that term could not accurately be discussed without reference to those statements—we do not here express our views thereon, as it is not necessary to do so in order to decide this case. We limit our holding to that expressed in the next paragraph.

Our review of the authorities leads us to hold that a use variance should not be granted unless the board of zoning appeals can find on the basis of substantial evidence that the property cannot reasonably be used in a manner consistent with existing zoning. In *Otto* the New York court of appeals stated that one seeking a variance must show that the *land* in question cannot yield a *reasonable return* if used only for a purpose allowed in the relevant zoning district. It will be noted that we have used the word "property" (*i.e.,* including improvements) rather than "land", reserving to a later day the decision whether we wish to adopt that aspect of the *Otto* definition.[22] It will also be noted that our holding speaks in terms of "reasonable use" rather than "reasonable return".[23] Whether property us-

[21] *Brown* v. *Beuc, supra,* at p 853; Rathkopf, *op. cit.,* p 45–3; *Ward* v. *Zoning Board of Appeals of Town of Hartford* (1965), 153 Conn 141 (215 A2d 104); *Brackett* v. *Board of Appeal of Building Department of City of Boston, supra,* at p 961. See Bryden, *op. cit.,* p 308.

[22] See *Sutton* v. *Board of Adjustment of City of Wilmington, supra.*

[23] See quotation preceding footnote 19 which states the matter alternatively, *i.e.* "he can secure no reasonable return from, *or* make no reasonable use of, his property."

able in trade or business or held for the production of income can reasonably be used for a purpose consistent with existing zoning will, no doubt, ordinarily turn on whether a reasonable return can be derived from the property as then zoned. While any property, including a single-family residence, may be made to produce income if a tenant can be found therefor, it would in our opinion be unrealistic as to all properties (without regard to their varying utility) to resolve the question solely on the basis of the return that can be derived from the property.

In the case of Leo's property, we perceive the question to be whether the property can continue reasonably to be used as a single-family residence. The appeal board made no determination in that regard, resting its finding of unnecessary hardship solely on the "heavy traffic and the closeness to the business section immediately to the west."

Leo's property has been used for some time as a single-family residence. While the board found there was "testimony" that Leo had not received any offers from residence-use buyers during the period of over a year the property had been listed and offered for sale, the asking price for the house and adjoining lot was $38,500 in a neighborhood where, according to the only record evidence, houses generally sell for $20,000 to $25,000. There was no evidence of efforts to sell the property at any price lower than $38,500; indeed, there was no testimony at all as to the extent of the sales effort or the income that could be derived from the property as zoned. See *Crossroads Recreation, Inc.*, v. *Broz* (1958), 4 NY2d 39, 44 (172 NYS2d 129, 132); *Forrest* v. *Evershed* (1959), 7 NY2d 256 (196 NYS2d 958); compare *Jones* v. *DeVries*, 326 Mich 126, 137, *et seq.*, applying the Grand Rapids ordinance.[24]

_____

24 The Grand Rapids ordinance states the *Otto* standard verbatim except that the words "which may reflect the unreasonableness of

Testimony that the house and lot could not be sold for $38,500 in a neighborhood where houses generally sell for substantially less than that amount does not, in our opinion, constitute any evidence that the property could not continue reasonably to be used as a single-family residence.  Compare *Hammond* v. *Bloomfield Hills Building Inspector* (1951), 331 Mich 551, 557.

Thus, there was not only a failure to find that the property could not reasonably be used in a manner consistent with existing zoning, but, as we read the record, there was no evidence upon which such a finding could have been based.  In this connection, it should be remembered that the fact that the property would be worth more[25] if it could be used as a doctor's clinic and that the corner of Puritan and Prest has disadvantages as a place of residence does not authorize the granting of a variance.  Heavy traffic is all too typical of innumerable admittedly residential streets.  Adjacency to gasoline stations or other commercial development is characteristic of the end of a business or commercial district and the commencement of a residential district.  "A district has to end somewhere."  *Real Properties, Inc.*, v. *Board of Appeal of Boston* (1946), 319 Mass 180 (65 NE2d 199, 201).[26]

It can readily be seen that unless the power of the board of zoning appeals to grant a use variance is defined by objective standards, the appeal board

_____

the zoning ordinance itself" in clause (2) of the *Otto* standard are not found in the Grand Rapids ordinance.  *Jones* v. *DeVries, supra,* at p 137.

[25] Under particular circumstances a large disparity in value might become a relevant consideration.  *Jones* v. *DeVries, supra,* at p 137. Compare *Smith* v. *Village of Wood Creek Farm* (1963), 371 Mich 127, 133.  See discussion in authorities collected in footnote 14.

[26] Compare *Penning* v. *Owens* (1954), 340 Mich 355, holding invalid spot zoning by the governing body in a case where the property was capable of use within the zoning as it was before the amendment under attack.

could (and we do not in any sense mean to suggest
this would be deliberate) rezone an entire neighbor-
hood—a lot or two lots at a time. The variance
granted in response to one "hardship" may well
beget or validate another claim of hardship and
justify still another variance.[27] If it is a hardship
to be next to a gasoline station, it could be a hard-
ship to be across from one, to be behind one, or
diagonally across from one. If heavy traffic is a
valid basis, variances might become the rule rather
than the sparingly granted exception.

We do not wish to be understood as challenging
the judgment of the board of zoning appeals. A
doctor's office with the appearance of a single-family
residence on a busy street which already has other
commercial uses may very well be a logical, sensible,
and unobjectionable use. However the question be-
fore us is not whether the board of zoning appeals
has acted reasonably, but whether on the proofs
and findings the board could grant a variance on
the ground of unnecessary hardship. We have con-
cluded that neither the proofs nor the findings jus-
tified the variance granted.

We have given careful consideration to the con-
siderable number of cases we found where the result
was based on the reviewing court's conclusion that
the appeal board had not abused the discretion con-
fided to it. If there is substantial evidence to sup-
port the necessary findings, such a decision is, in-
deed, the correct one. However, there must be such
evidence and such findings.[28]

---

[27] *Ward* v. *Zoning Board of Appeal of Town of Hartford, supra,*
at p 107.
[28] 2 Rathkopf, *op. cit.*, p 65–17; 101 CJS, Zoning, § 329, pp 1133–
1136, § 331, p 1140; 2 Yokey, *op. cit.*, (3d ed) §§ 15–7, 19–5;
Antieau, *op. cit.*, § 7.68; 8A McQuillin, Municipal Corporations (1965
Rev), § 25.230.
   "The function of the board of zoning adjustment, insofar as
variances are concerned, is to preserve, not to destroy, zoning ordi-
nances. It is not to second-guess the city council. *Just as a court*

We have considered and rejected appellee's contention that a board of zoning appeals may not grant a use variance.[29]  We have also considered appellee's contention that the board's action should be reversed because the hardship alleged by Leo was "self-created." However, the hardship found by the board in this case could not be said to have been self-created—Leo neither created the traffic conditions on Puritan nor the gasoline station immediately to the west of his property.[30]

Affirmed.  Costs to appellee.

LESINSKI, C. J., and BURNS, J., concurred.

*may not substitute its judgment for the judgment of the city council neither may the board of zoning adjustment.* If in doubt, the board should never grant a variance.

"Actually the proper function of the variance is to provide a reasonable use for a parcel of property having unique characteristics, where the zoning ordinance itself would probably be unconstitutional as applied to that particular parcel of property because it does not permit a reasonable use of such property. In such cases a variance is necessary to sustain the constitutionality of the ordinance." Arnebergh, The Functions and Duties of a Board of Zoning Adjustment, *op. cit.*, at p 118.  (Emphasis added.)

29 See Cunningham Land-Use Control—The State and Local Problems, *op. cit.*, p 394, n 138, and Mandelker, Delegation of Power and Function in Zoning Administration, 1963 Wash U L Quar, pp 60, 69, and 2 Rathkopf, *op. cit.*, p 38–1.

30 Compare *Searles* v. *Darling, supra:* "We hesitate to lay down a rule that Darling's property, by his purchase of it, became positively ineligible for a variance." See, also, *School Committee of City of Pawtucket* v. *Zoning Board of Review* (1957), 86 RI 131 (133 A2d 734, 737); Bryden, *op. cit.*, pp 306, 307; *Jones* v. *DeVries* (1949), 326 Mich 126, 138; *Faucher* v. *Grosse Ile Township Building Inspector* (1948), 321 Mich 193, 199.