**Mary Faith WILSON and Citizens Association of Georgetown, Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**No. 6005.**

District of Columbia Court of Appeals.

Argued Jan. 18, 1972.

Decided April 6, 1972.

---

William H. Greer, Jr., Washington, D. C., for petitioners.

Earl A. Gershenow, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before NEBEKER, PAIR and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

Brought into question by this petition for review are orders made by the District of Columbia Board of Zoning Adjustment (the Board) during and after proceedings on an appeal for a variance. Petitioners [1] contend that because of procedural irregularities, they were deprived of any opportunity to be heard when the Board reconsidered action previously taken by it on the appeal.

The Board, a creature of the Zoning Act,[2] is authorized to grant, under conditions prescribed by D.C.Code 1967, § 5–420(3), variances to the Zoning Regulations.

The action before the Board in this case was commenced by the owner (the applicant) of premises 3406 Q Street, N.W., a one-family dwelling, to obtain, pursuant to Section 7205.3 of the Zoning Regulations a variance to permit the parking of an automobile within ten feet of the dwelling. By that section of the Zoning Regulations it is provided that:

> If approved by the Board of Zoning Adjustment open *parking spaces* accessory to any *structure,* may be located anywhere on the *lot* upon which the *structure* is located, or elsewhere except in the case of a *one-family dwelling* . . . .

Insofar as we have been able to ascertain from the administrative record, several months prior to the appeal for a variance, applicant obtained permits to pave an area approximately 20′ by 23′ of the side yard of his dwelling for the parking of one automobile and to construct "a brick paved driveway and apron." Sometime thereafter, plans for the work were revised and permission was obtained to construct a parking area for two automobiles [3] and

---

1. Petitioners are the Citizens Association of Georgetown and the owner of a dwelling abutting the premises involved in the zoning variance dispute.

2. D.C.Code 1967, § 5–401, et seq.

3. Section 7205.12(b), .2, .21 of the Zoning Regulations permits parking of an automobile within the open space of the side yard of a one-family dwelling, *provided no portion of the parking space is within ten feet of the dwelling.*

construct the driveway of bituminous concrete. On the face of a form entitled "Supplemental Information Required for Review," signed by the applicant's authorized agent, there appears a notation "Parking space for two cars. (Parking space in Georgetown is at a premium.)" It appears however from a subsequent statement of such agent that, prior to the issuance of the permits as revised, the parking area was completed so as to accommodate two automobiles.

By letter under date of September 21, 1970, applicant was advised by the Acting Zoning Administrator:

I regret to inform you that due to an error by a member of this Division, Building Permit B 192960, issued to you on July 31, 1970, authorizing you to install parking in the side yard of premise [sic] 3406 Que Street, N. W., was issued in error.

Parking is permitted in a side yard. However, it must be located at least ten (10) feet from a single family dwelling and three (3) feet from any side lot line.

It will be necessary for you to make an appeal to the Board of Zoning Adjustment, Room 11–b, District Building, Fourteenth [a]nd E Streets, N. W., requesting a variance from the provisions of the Zoning Regulations.

Applicant then appealed to the Board, pursuant to Section 7205.3 of the Zoning Regulations, for a variance.

After notice as provided in Section 8203 of the Zoning Regulations, a public hearing was conducted on December 9, 1970, at which there was testimony in favor of and in opposition to the variance. Finding that parking was a problem in the area, the Board concluded that applicant had proved a hardship within the variance clause of the Zoning Regulations,[4] and that denial of the requested relief would "result in peculiar and exceptional practical difficulties and undue hardship upon the owner." The Board concluded also that the requested relief could be granted "without substantially impairing the intent, purpose and integrity of the Zone Map." The Board then entered on December 15, 1970, an order, effective January 25, 1971, granting the variance requested, subject however to the conditions that:

1. The [applicant] shall move the swimming pool pump to a location closest to the [applicant's] house than to the house on lot 804.[5]

2. The [applicant] shall brick top the parking area, side walk and the apron to conform to the esthetics of the neighborhood.

Thereafter at public hearings conducted February 17 and March 17, 1971, the Board permitted testimony and argument on behalf of applicant on oral motions to reconsider so much of the January 25, 1971 order as required applicant to brick top the parking area and driveway.[6] Considered also by the Board in this connection was a written motion for reconsideration filed thereafter by counsel for the applicant, in which it was urged—among other things—that the Board, in granting the variance, was without authority to impose either of the two conditions. By its order and opinion entered March 23, 1971, the Board de-

4. The Board is authorized by Section 7203.1 of the Zoning Regulations to "vary or modify the amount of parking spaces required for non-residential uses . . . ." But no such authority is vested in the Board in respect to residental parking. Section 7205.3 seems to make this clear.

5. Petitioner Wilson, the owner of the house on lot 804, complained at the hearing that sometime prior to the controversy respecting the parking area, applicant installed a swimming pool pump close to the exterior wall of such petitioner's abutting dwelling.

6. Applicant first expressed to the Board his willingness to remove the swimming pool pump to a location close to applicant's dwelling.

nied the applicant's motions for reconsideration.

On April 14, 1971, applicant's attorney, accompanied by two of his associates, appeared before the Board and, in the absence of the petitioners and without any notice to them, was permitted to urge to the Board the same matters set forth in the written motion for reconsideration as reasons why the two conditions imposed by the January 25, 1971 order should be vacated.

There is no indication in the administrative record whatsoever that the Board, prior to its consideration of the matters brought to its attention on February 17, March 17 and April 14, 1971, made any effort to comply with the requirements of Section 8204 of the Zoning Regulations.[7]

Upon consideration of such representations of counsel for the applicant, the Board entered on April 20, 1971, an order effective June 1, 1971, amending the second condition imposed in the order granting the variance so as to permit the applicant to substitute for "brick top" a material called "cosmicolor."

Petitioners' sole concern in this matter, as expressed first to the Board and now in their brief, is that the applicant be required to comply fully with the two conditions imposed in the order granting the variance. What they complaint of, therefore, is that the Board, without first complying with the mandatory provisions of Section 8204 of the Zoning Regulations, altered in a way regarded by them as substantial one of the conditions imposed.

. Assuming therefore that the Board, in granting the variance, had authority to impose either or both of the conditions, its order of June 1, 1971, influenced as it was by matters brought to the Board's attention without notice to petitioners and in their absence, was arbitrary and capricious to an extent bordering on irresponsibility in an administrative law sense. Robey v. Schwab, 113 U.S.App.D.C. 241, 307 F.2d 198 (1962); Castle v. McLaughlin, 106 U.S.App.D.C. 145, 270 F.2d 448 (1959); Jarrott v. Scrivener, 225 F.Supp. 827 (D.D.C. 1964). Under the circumstances, the Board's Order effective June 1, 1971, cannot be permitted to stand.

Although these ex parte presentations were addressed only to the Board's authority to impose the two conditions, the fact is that such conditions are inextricably a part of and dependent upon the Order which granted the variance. Because the ex parte presentations were made by members of the legal profession well known to the Board for their expertise in zoning matters,[8] the entire proceedings appear to

7. 8204.1. A rehearing on an appeal or application shall not be held by the Board except upon a motion to reconsider its action on such appeal or application made by a member of the Board not later than the first meeting succeeding the meeting at which the Board decided the appeal or application. Any such motion must be carried by at least four affirmative votes.
8204.2. No request for rehearing shall be considered by the Board unless new evidence is submitted which could not reasonably have been presented at the original hearing. If a rehearing is granted, notice shall be given as in the case of an original hearing.

8. Counsel for the applicant, in urging the Board to strike from the Order of January 25, 1971, the two conditions, reminded the Board that he was at one time their lawyer and that he was frequently asked for advice as to whether "an estoppel would lie against the Board . . . in a variance situation." He then represented to the Board that "I would submit that you sitting as a quasi-judicial body, and hearing a case that really has come to you at the suggestion and at the urging of the Zoning Administrator's office, almost in an appeal capacity, you certainly have the jurisdiction in that capacity to say that if the Zoning Administrator's office, having lawfully issued these permits, . . ." discovered, after the completion of the parking area, that such permits had been issued by mistake, the Board is unable to do anything about it.

have become so tainted as to require a new hearing. Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 33, 269 F.2d 221, 224–225 (1959); *cf.* Jarrott v. Scrivener, *supra.*

Accordingly, we reverse and remand for that purpose. At the new hearing, all interested parties must be afforded a full opportunity to present their views. The Board must then determine from appropri-

> A member of the Board then inquired of counsel:
> In other words, what you really are saying to us is that we really have no jurisdiction, no matter what we do, no one can make him take it out?
> Applicant's counsel replied:
> That is exactly what I am saying.

9. Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 287–289, 96 F.2d 554, 559–61, cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct.

ate findings of fact[9] (1) whether, in the light of D.C.Code 1967, § 5–420(3), and Zoning Regulations, §§ 7202–05,[10] it has authority to grant the variance,[11] and (2) if so, whether it had authority to impose the two conditions or either of them.

Reversed and remanded with directions to vacate the orders effective January 25, 1971 and June 1, 1971, and grant a new hearing on applicant's appeal for a variance.

72, 83 L.Ed. 391 (1938); Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535 (decided February 17, 1972).

10. *See* notes 3 and 4.

11. Palmer v. Board of Zoning Adjustment, *supra* note 9. *See also* Puritan-Greenfield Improvement Ass'n v. Leo, 7 Mich. App. 659, 153 N.W.2d 162, 165 n. 10 (1967). *Cf.* Clouser v. David, 114 U.S. App.D.C. 12, 309 F.2d 233 (1962).