Froessel, J.
The Zoning Board of Appeals of the Town of Irondequoit (hereinafter called the Board), by variance of the zoning ordinance, granted John J. O’Connell and Walter J. Bodenhouse, intervenors in this proceeding, permission to erect a two-story medical office building on their vacant property located at the intersection of St. Paul Boulevard and Wicklow Drive in Irondequoit. It appears that the neighborhood, zoned “ E ” Besidential, is exclusively improved with conforming uses, consisting mainly of one-family homes, except for two gasoline stations erected prior to enactment of the zoning ordinance and situated about one mile from the subject property. Immediately adjacent to intervenors’ vacant property on the south is a two and one-half story brick building, formerly a Masonic temple and presently a synagogue — a permissive use under the zoning ordinance.
At the hearing before the Board, intervener O’Connell appeared and asserted in a very brief statement that the ‘ ‘ negligence ” of the town in permitting construction of the building now used as a synagogue had thwarted the development of his property for residential purposes, adding: “ nobody wants to build a house next to a public building ’ ’. In support of interveüor’s position, a real estate broker contributed his conclusion to the effect that his efforts to sell the property over a period of five years were met by objections to the building next door. There was also submitted a map bearing the signatures of several property owners under a statement that they had no objection to the proposed variance. (One of these signatories later became a petitioner in this proceeding.) This represents the totality of “ evidence ” submitted in support of the application.
*260 Opposing intervenors’ application were about 14 neighboring property owners, all located within 500 feet of the subject premises, and most of whom appeared by counsel. They objected generally to the proposed variance in the interest of preserving the “beautiful” residential character of the neighborhood; because it would “ put a foot in the door ” toward, breaking down the ordinance; in order to preclude traffic hazards and unsafe conditions in consequence; and since property values would probably depreciate. On the question of salability, their counsel expressed the thought that the intervenors “ could [sell] for a fair price ”.
At the conclusion of the hearing a committee of three Board members was appointed to inspect the site and the surrounding neighborhood. Upon reporting to the Board the committee submitted that, “ although this is a very nice neighborhood ”, it “ would be difficult to use ” the subject lots “ for the purpose for which they are presently zoned ”. A resolution was accordingly adopted granting the variance application, and petitioners commenced the instant article 78 proceeding.
Annexed to the petition were a number of affidavits which, among other things, tended to negate intervenors’ contention that they could not profitably dispose of the property. They point out that O’Connell owned the land surrounding the synagogue, known as “ O’Connell’s (amended) Seneca Park Tract ” on a filed map; that the lots in said tract had 1 ‘ protective covenants regulating the design, size, use and set-back”; that each of intervenors ’ two lots is assessed for $700; that the value of each lot is $3,000; that the Babbi of the synagogue offered to purchase these lots for $6,500 for the purpose of building his home thereon, but that O’Connell would sell only on condition that the sale price be $10,000 and that his fellow-intervenor, Bodenhouse, be permitted to build the home; that one of the petitioners sought to purchase these lots to build his own home, but O’Connell indicated he would not sell unless Bodenhouse be allowed to build the home; that recently Bodenhouse told one of the petitioners that if he could not build the medical center he would sell the property to the synagogue for a parking lot; that in addition to the subject lots three homes adjoined the synagogue property; and that the construction of the medical center “would be out of the character, use and design of the *261 predominating neighborhood quality and standards Special Term refused to consider these affidavits, and in thus limiting its scope of review found the variance grant justifiable. The Appellate Division affirmed, with one dissenting vote.
The Legislature has confided in the zoning boards of appeal the discretionary power to “ vary or modify ” the application of zoning restrictions to individual property owners upon a showing of ‘1 practical difficulties or unnecessary hardships ’ ’ (Town Law, § 267, subd. 5; Irondequoit Zoning Ordinance, § 32, subd. b). In pursuance of this policy, this court has defined the essential elements of hardship upon which the grant of a variance must be conditioned (Matter of Otto v. Steinhilber, 282 N. Y. 71, 76).
The Board, in the instant proceeding, “ found ” these elements to be present. The return of the Board includes its resolution which states, among other things, that (1) the subject property could not “ yield a reasonable return if used only for a purpose allowed in an ‘ E ’' District Residential ”; (2) the interveners’ “ plight is due to the unique circumstances relating to its proximity to the said adjoining [synagogue] building * * * and not to the general conditions in the neighborhood ”, and (3) permitting the use authorized by the variance “ would not decrease residential values in the area and such use would not alter the essential character of the locality ”.
These conclusions of the Board, with little more, however, do not justify a modification of the zoning ordinance. Upon review, a variance may not be sustained unless “ the hardship and its occasion [are] exhibited fully and at large” in the return of the proceedings (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 290; see Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39). The return in the instant proceeding is clearly deficient in this regard. It indeed reflects the meagerness of the evidence before the Board. The only evidence in the record which bears on the question of “ reasonable return ” — the first element of hardship under the Otto case (supra) — was that adduced by intervenor O’Connell and his real estate broker at the hearing before the Board. It was merely asserted that they tried to sell the property which he owned for 40 years but could not. This will not do.
*262 In the first place, it was not shown that any diligent and bona fide effort was made to sell the property. We are left to guess the means, if any, that were employed to effect a sale thereof. Interveners do not tell us whether the property was advertised, and, if so, how; that it was listed with other brokers, or even that a- sign was placed on the property to indicate that it was for sale (contrast Matter of Crone v. Town of Brighton, 19 Misc 2d 1023). Moreover, the terms and conditions upon which the property was offered for sale are not furnished. For all that appears, the price demanded may have been prohibitive and the terms and conditions of sale unreasonable. Interveners have not demonstrated that their efforts to sell were in good faith.
Secondly, the proof on the issue of “reasonable return” is deficient in another vital respect. This court has consistently held that a mere showing of a present loss is not enough. In order to establish a lack of “ reasonable return ”, the applicant must demonstrate that the return from the property would not be reasonable for each and every permitted use under the ordinance (Matter of Young Women’s Hebrew Assn. v. Board of Standards & Appeals, 266 N. Y. 270, 275; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86, 90; Matter of Crossroads Recreation v. Broz, supra, p. 45; see, also, Matter of Graham v. Newton, 7 Misc 2d 34, 38). The present loss and any projected losses attributable to an alternative use must be demonstrated by some “ dollars and cents ” proof (see Matter of Crossroads Recreation v. Broz, supra, pp. 44-45). Upon the record in the instant proceeding, the intervenors did not even suggest that they had explored the possibility of utilizing the property for a parking lot, a parish house or residence in connection with the adjoining synagogue, for a professional office as part of a dwelling, for a greenhouse, plant nursery, playground or library —all permissible “E” Residential' uses under the ordinance — or establish that the alternative uses were economically impracticable.
Under the rule in Otto (supra), an owner must also show that his plight is ‘ ‘ due to unique circumstances and not to the general conditions in the neighborhood ” (282 N. Y., p. 76; accord Matter of Hickox v. Griffin, 298 N. Y. 365; Matter of Clark v. Board of Zoning Appeals, supra, p. 91; Matter of Young Women’s *263 Hebrew Assn. v. Board of Standards & Appeals, supra, p. 276; Matter of Levy v. Board of Standards & Appeals, 267 N. Y. 347, 353). Here too there was insufficient evidence to support the Board’s finding in this respect.
It is true that a committee composed of Board members did inspect the subject property and concluded that the conditions which they observed warranted a variance. The only circumstances reported to us, however, indicate that the subject property is located in a “ very nice neighborhood ” and that “ it would be difficult to use [the] lots for the purposes for which they are presently zoned ”. No facts or considerations bearing upon the elements of lack of reasonable return or uniqueness were submitted by the Board other than that appearing in the record of the hearing. The Board may act upon its own knowledge of conditions, but in the return it must disclose those facts upon which a reviewing court can determine that, under the statute, the Board had power to grant a variance (Matter of Levy v. Board of Standards Appeals, supra, p. 351; Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 454). It did not even report on the nature of the properties adjoining the synagogue other than interveners’.
In view of the fact that the evidence before the Board was inadequate to sustain its determination (1) that the subject property could not yield a reasonable return if used only for a purpose allowed in an “ E ” District Residential, and (2) that the intervenors ’ plight is due to the unique circumstances relating to its proximity to the synagogue and not to the general conditions in the neighborhood, we do not deem it necessary to discuss the third prerequisite under the Otto rule, namely, that the use authorized by the variance will not alter the essential character of the locality. This latter ground was strenuously urged by petitioners at the hearing before the Board, based largely on the fact that, except for two gas stations a mile away, the area is highly residential without a single nonconforming use.
Nor need we reach the question as to whether Special Term acted properly when it refused to consider the affidavits which were annexed to the. petition in this proceeding (see Town Law, § 267, subd. 7, pars, [b], [c]; People ex rel. St. Albans-Springfield Corp. v. Connell, 257 N. Y. 73, 80-81) after having *264 observed that these affidavits “ tend to refute owners’ position Upon this record, which consists of nothing but two or three conclusory statements which as a matter of law are insufficient to sustain the Board’s determination in the first instance, we have no alternative but to annul.
Accordingly, the orders of the Appellate Division and Special Term should be reversed, and the determination of the Zoning Board of Appeals annulled, without costs, and without prejudice to the renewal of the application to the Board if the intervenors be so advised.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Van Voorhis and Burke concur.
Orders reversed, etc.