LORLAND CIVIC ASSOCIATION *v.* DiMATTEO.

1. MUNICIPAL CORPORATIONS—BOARDS OF ZONING APPEALS—JUDICIAL REVIEW—TIME.

   Provision of State zoning enabling act that the decision of a city board of zoning appeals "shall not become final until the expiration of 5 days from the date of entry" does not limit the time for bringing an action in court for the purpose of determining the validity of the board's action (CLS 1961, § 125.585).

2. SAME—BOARDS OF ZONING APPEALS—JUDICIAL REVIEW.

   Decisions of municipal boards of zoning appeals on issues of fact or discretionary matters are reviewable by courts when timely appeal is taken.

3. SAME—BOARDS OF ZONING APPEALS—HEARING.

   Municipal board of zoning appeals is required by State enabling act and by city ordinance to hold a hearing before acting (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

4. SAME—BOARDS OF ZONING APPEALS—JUDICIAL REVIEW.

   Municipal boards of zoning appeals are quasi-judicial bodies whose decisions affect private rights and under State Constitution are subject to judicial review (Const 1963, art 6, § 28).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–6, 9, 10] 58 Am Jur, Zoning § 229 *et seq.*
[3] 58 Am Jur, Zoning § 222.
[7] 58 Am Jur, Zoning § 233.
[8, 12] 58 Am Jur, Zoning § 258.
[11] 58 Am Jur, Zoning § 197.
[13–15, 18, 19] 58 Am Jur, Zoning § 198 *et seq.*
[16, 17] 58 Am Jur, Zoning § 224.
[20] 58 Am Jur, Zoning § 225.
[21] 58 Am Jur, Zoning § 259.
[22] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 277; 58 Am Jur, Zoning § 4.

5. Courts—Municipal Corporations—Boards of Zoning Appeals—Appeal and Error.
Additions to the record by testimony taken in circuit court on appeal from order of municipal board of zoning appeals *held*, unauthorized by law, since courts review such orders on the record made before zoning board.

6. Same—Municipal Corporations—Boards of Zoning Appeals—Judicial Review—Superintending Control.
Order of municipal board of zoning appeals is reviewed by application to the circuit court for an order of superintending control (GCR 1963, 711).

7. Certiorari—Scope of Review—Boards of Zoning Appeals.
Orders of municipal corporation boards of zoning appeals were reviewable by certiorari under prior practice.

8. Same—Scope of Review—Boards of Zoning Appeals.
Additional evidence could not have been offered to support an order of a municipal board of zoning appeals on review of such an order by certiorari.

9. Appeal and Error—Superintending Control—Municipal Corporations—Zoning Variance—Scope of Review.
Substitution of superintending control for certiorari, mandamus, and prohibition did not change the scope of appellate review of a variance granted by municipal board of zoning appeals under court rules (GCR 1963, 711).

10. Same—Boards of Zoning Appeals—Courts—Stipulations—Scope of Review.
Parties to an action to review an order of a municipal board of zoning appeals may enter a stipulation concerning the record on appeal but they may not, by agreement or silence, add to the record something not considered by the trier of fact, or change the nature of the inquiry on appeal.

11. Municipal Corporations — Zoning — Variances — Enabling Statute.
Legislature and city council have confided to the municipal board of zoning appeals· the power to allow a variance subject to limited appellate review (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

12. Appeal and Error—Boards of Zoning Appeals—Courts—Scope of Review.
An appellate court exceeds its function when it measures an order of a municipal board of zoning appeals against evidence the board did not consider.

13. MUNICIPAL CORPORATIONS—ZONING—VARIANCES—BOARDS OF ZONING APPEALS.

A use variance may not be granted unless municipal board of zoning appeals can find, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with existing zoning regulations.

14. SAME—ZONING—VARIANCES—PROOF OF NEED FOR VARIANCE.

One who seeks a use variance, claiming his property cannot reasonably be used in a manner consistent with existing zoning, must establish that a use which might be authorized under the zoning ordinance by the city plan commission is not an available use by proof that an application was made to, and rejected by, the city plan commission, or by proof that, even if the commission were to issue the necessary authorization, the property could not reasonably be put to the authorized use.

15. SAME—ZONING—VARIANCES—INABILITY TO OBTAIN FINANCING.

Inability to obtain building financing attributable to a site and its zoning for 1- and 2-family dwellings, not caused by temporary mortgage market conditions, *held*, relevant to the question whether the property could reasonably be used for such purposes.

16. SAME—ZONING—VARIANCES—EXPERT KNOWLEDGE.

Municipal board of zoning appeals may be justified in acting on its own expert knowledge, provided that knowledge is made a part of the record, in decision relating to granting use variances (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

17. EVIDENCE—OPINION—EXPERT TESTIMONY.

Opinion of member of municipal board of zoning appeals that financing for a type of land use project would be "most difficult" to obtain *held*, insufficient to support board's finding that it was "unlikely" such financing could be obtained, without any showing on the record of either the member's qualification to express an opinion or of the factual basis for his opinion (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

18. MUNICIPAL CORPORATIONS—ZONING—VARIANCES—HARDSHIP.

Municipal board of zoning appeals' grant of a use variance based on hardship to a property owner exceeds board's power, where the hardship, adjacency to a heavily travelled freeway service drive, affects many property owners in same manner; relief on

general hardship ground may only be allowed by legislative body or, if the proper showing is made, by the courts (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

19. SAME—EVIDENCE—HARDSHIP—ZONING—VARIANCES.

Statement that land, for which zoning variance from municipal zoning ordinance was sought on ground of hardship, had been offered for sale for more than 2 years *held,* insufficient to establish hardship, since owner may have set too high a price for the land (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

20. SAME—ZONING—VARIANCES—HARDSHIP—OPINION.

Grant by municipal board of zoning appeals of a hardship variance to a property owner to erect a 2-story, 30-unit apartment building in a district zoned for 1- and 2-family dwellings, *held,* not supported by evidence which consisted merely of opinion of board member given at board meeting, not at a hearing, that it was unlikely anyone would erect a 1- or 2-family dwelling on the property (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

21. SAME—ZONING—VARIANCES—APPEAL AND ERROR—REMAND.

Grant by municipal board of zoning appeals of a hardship variance to a property owner to erect a 2-story, 30-unit apartment building in a district zoned for 1- and 2-family dwellings based on insubstantial evidence, *held,* reversible error, but remand to the board is required to permit property owner to present his claim on the merits (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

22. COVENANTS—BUILDING RESTRICTIONS—ZONING—VARIANCES.

Use of the words "a dwelling house" and "a residence", as in deeds to restrict land use, have been construed to mean 1 single dwelling or 1 single residence, therefore to have restricted the use of the premises to single residences or dwellings, and it is unnecessary for the Court to construe a similar deed restriction on property involved in action to enjoin construction of an apartment building authorized by zoning variance, since the existence of a valid restriction would not be reason for denying a use variance to which a property owner would otherwise be entitled.

Appeal from Wayne; Bowles (George E.), J. Submitted Division 1 March 8, 1967, at Detroit. (Docket No. 1,632.) Decided March 25, 1968.

Complaint by Lorland Civic Association, a Michigan corporation, Stephanie Gould, and Martin Weimert against Alfred DiMatteo seeking an order nullifying a zoning variance granted to defendant by the Board of Zoning Appeals of the City of Detroit. Judgment for defendant. Plaintiffs appeal. Reversed and remanded to the Board of Zoning Appeals.

*Arthur T. Iberson,* for plaintiffs.

*Berry, Hopson, Francis & Mack (Robert W. Kefgen,* of counsel), for defendant.

LEVIN, J. Defendant, Alfred DiMatteo, obtained a variance from the Detroit board of zoning appeals permitting the erection of a 2-story, 30-unit apartment building (an RM use) in an R2 zoning district on a group of 20-foot lots having a total frontage of 240 feet on Southfield freeway with depths of about 152 feet.

The board found "unnecessary hardship and practical difficulty" and made the following subsidiary findings: the property was located on the east side of Southfield between Keeler and Midland avenues adjacent to the easterly service drive. Southfield, which is a limited-access expressway in Detroit, passes the subject property at surface level, and both Southfield and the adjacent service drive carry a heavy volume of traffic. The appeals board also found that the property had been offered for sale for a period of more than 2 years "without any takers to purchase same for the possible erection of 2-family dwellings"—duplexes or 2-family dwellings being a permitted use in an R2 zone—and that it was "unlikely that financing could be obtained to erect 1- or 2-family dwellings on this property."

Plaintiffs filed a complaint with the circuit court seeking (1) a determination that the board of zoning appeals acted in excess of its power and (2) an injunction against the proposed use on the ground that it violated a deed restriction concerning the use of the land. The circuit court, after a hearing, denied the sought-for relief. Plaintiffs appeal.

## I.

The defendant asserts that insofar as the plaintiffs' complaint seeks a review of the action of the board of zoning appeals, it was filed out of time. The appeals board's order was entered and mailed on June 28, 1965, and the complaint was filed on July 26, 1965. The governing zoning enabling act provides that the decision of the appeals board "shall not become final until the expiration of 5 days from the date of entry."[1] The defendant asserts that plaintiffs' complaint was required to be filed, if at all, within 5 days after the entry of the appeals board's order. This issue has already been resolved contrary to the defendant's contention. In *Tireman-Joy-Chicago Improvement Association* v. *Chernick* (1960), 361 Mich 211, 221, the Court ruled that the 5-day provision does not set a time limit for seeking judicial review of orders of a board of zoning appeals.

The defendant also relies on the provision in section 20.7 of the zoning ordinance of the city of Detroit that reads: "The decision of the board in these and all other matters heard by it shall be final insofar as it involves discretion or the finding of facts." At the time the Detroit zoning ordinance was adopted[2] the enabling act provided in language

---

[1] CLS 1961, § 125.585 (Stat Ann 1958 Rev § 5.2935).
[2] The Detroit zoning ordinance became effective December 25, 1940.

paralleling that just-quoted: "The decision of such board shall be final so far as it involves discretion or the finding of facts."[3] However, in 1941 that statutory provision was replaced by the previously quoted language establishing the finality of the board's order upon the expiration of 5 days from the date of its entry. PA 1941, No 306.

The Michigan Supreme Court has rejected the contention that zoning appeals board action has such finality on issues of fact or discretionary matters that its decisions are not subject to judicial review. See *Jones* v. *DeVries* (1949), 326 Mich 126, 133, where the Court, in so holding, reviewed the history of the previously mentioned statutory provisions. In *Tireman-Joy-Chicago, supra* (p 220), the Court again asserted its reviewing function in respect to orders of boards of zoning appeals.

We also note that the Constitution of 1963, art 6, § 28 provides:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

The Detroit board of zoning appeals is required, both by the enabling act and by the ordinance, to hold a hearing before acting.[4] Its decisions depend upon individual rather than general fact determina-

---

[3] CL 1929, § 2637 (Stat Ann § 5.2935).
[4] CLS 1961, § 125.585 (Stat Ann 1958 Rev § 5.2935); Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963.

tions and it, therefore, acts judicially rather than legislatively. 1 Davis, Administrative Law Treatise, § 7.04. It is a quasi-judicial body[5] whose decisions affect private rights and, hence, the just-quoted constitutional provision establishes both a right to judicial review and a minimum standard of review. Neither the enabling act nor the ordinance state a more generous standard of review.

## II.

Having decided the board's findings and order are judicially reviewable, and having determined the applicable standard of review, we next consider what constitutes the reviewable record. We are presented with 2 sets of transcripts: 1 of testimony taken by the board of zoning appeals and the other of testimony heard by the circuit judge.

In our opinion both the circuit judge and we review the order of the appeals board on the record made before the appeals board, and the parties should not have been permitted at the circuit court hearing to add to the record, either for the purpose of sustaining or defeating the appealed order.

The method by which an order of a board of zoning appeals is now reviewed is, pursuant to GCR 1963, 711,[6] an application to the circuit court for an order of superintending control.

Under the prior practice, board of zoning appeals action was reviewable by certiorari. When review was by certiorari, additional evidence could not have been offered to support the order sought to be reviewed. *In re Fredericks* (1938), 285 Mich 262, 266;

_____

[5] 8A McQuillin, Municipal Corporations (3d ed rev 1965), § 25.230; 1 Metzenbaum, Law of Zoning (2d ed), p 675; 58 Am Jur, Zoning, §§ 194, 198; 101 CJS, Zoning, §§ 205, 209; 2 Yokley, Zoning Law and Practice (3d ed), § 13–2.

[6] Revised judicature act, PA 1961, No 236, § 615 (CLS 1961, § 600.615 [Stat Ann 1962 Rev § 27A.615]).

3 Davis, Administrative Law Treatise, § 24.02; 58 Am Jur, Zoning, § 255.[7]

In substituting superintending control for certiorari, mandamus, and prohibition, the intention was to eliminate frequent mistakes in the choice of remedies. However, as this Court recently stated, GCR 1963, 711 did not change the scope of appellate review of a variance granted by a board of zoning appeals. *Indian Village Manor Company* v. *City of Detroit* (1967), 5 Mich App 679, 685; compare *Drouillard* v. *City of Roseville* (1967), 9 Mich App 239.

Here, at the circuit court hearing, each party was permitted to offer testimony and other evidence over the objection of the other party. As will appear (see part III of this opinion) the record made before the zoning appeals board was scanty, and we can understand both the parties' desire to supplement the record and the circuit judge's judgment that supplementation was necessary.[8] However, while parties may enter into a stipulation concerning the record on appeal, they may not, by agreement or silence, add to the record something not considered by the trier of fact or change the nature of the inquiry

---

[7] The standard State zoning enabling act, which has been substantially enacted in so many other jurisdictions (See *Puritan-Greenfield Improvement Association* v. *Leo* [1967], 7 Mich App 659, 666), expressly provides both for review by certiorari and the taking of additional testimony, if such is necessary in the judgment of the reviewing court for a proper disposition of the matter. For this reason, decisions from other States are of little help or guidance to us in this area. See 8A McQuillin, Municipal Corporations, § 25.335; 101 CJS, Zoning, § 331(b); 2 Rathkopf, Law of Zoning, pp 65–30 *et seq.*
Some statutes provide for a trial *de novo* upon review. See 8A McQuillin, Municipal Corporations, § 25.336; 101 CJS, Zoning, § 331 (b); 2 Rathkopf, Law of Zoning, pp 65–30 and 65–36; 58 Am Jur, Zoning, § 255.

[8] Compare section 8 of the administrative procedure act (CLS 1961, § 24.108 [Stat Ann 1961 Rev § 3.560(21.8)]) concerning State agencies, which expressly confers on the circuit court power to return a contested case to the State agency from which the appeal is taken, to supplement the record theretofore made before it and for additional findings thereon by the agency.

on appeal. The circuit court can no more consider evidence not heard by the zoning appeals board than this Court could allow appealing parties to add evidence not considered by the trier of fact to a trial court record on appeal, whether in a civil or criminal case, and whether for support or opposition to a finding of fact.

The legislature and common council have confided to the zoning appeals board the power to allow a variance, subject to limited appellate review. Courts review the appeals board's exercise of that power. The appellate court's task is to determine whether the order on appeal has been entered according to law. An appellate court exceeds its function when it measures a zoning appeals board order against evidence the board did not consider. Compare *Drouillard* v. *City of Roseville, supra.*

### III.

Turning to the record in this case, the transcript of proceedings on June 15, 1965, consists of 2 pages. The only evidence offered was the testimony of an abutting property owner who stated he had mixed emotions about the variance; he thought that the proposed apartment development had merit; he didn't believe anyone would build a 1-family residence on Southfield; and he didn't know whether a 2-family or duplex could be built, but perhaps it could.

When the witness concluded his testimony, the chairman of the appeals board announced the matter would be taken under advisement. The appeals board again considered the matter on June 22, 1965, and the record furnished to us of this meeting consists of 4 pages.

The secretary of the board announced the matter had been under advisement. At this point a member of the board stated he had made a personal inspection of the property and, in his opinion, the board had "jurisdiction" to grant a variance, because the property had been subdivided into 20-foot lots indicating an intention that it be used commercially[9] (this despite a deed restriction to residential use), and because Southfield freeway runs at surface level past the subject property and carries a heavy volume of fast-moving traffic. He added that the property had been offered for more than 2 years by a real estate company—he did not indicate with what result. He expressed the opinion that it was "unlikely" anyone would buy the property to erect either a single- or a 2-family dwelling, and it would be "most difficult" to obtain financing for that purpose. He stated that the highest and best use of the land[10] would be for an apartment dwelling, and such a development would not adversely affect the value of contiguous property.

In *Puritan-Greenfield Improvement Association* v. *Leo* (1967), 7 Mich App 659, 673, we held that a use variance may not be granted unless the board of zoning appeals can find, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with existing zoning.

In R2 districts, single-family and 2-family dwellings are permitted. In R2 districts, the zoning ordinance also permits, upon approval by the city plan commission, multiple dwellings occupied by not more than 8 families and medical or dental offices. However, the common council may disapprove a multiple dwelling occupancy authorized by the city plan com-

---

[9] The appeal board's order found that "the property was originally intended to be used for commercial purposes."

[10] That "highest and best use" is not relevant, see Crawford, Michigan Zoning and Planning, § 8.31.

mission. The record does not indicate whether the defendant made any application to the city plan commission and, if so, what action was taken. A use allowed by the city plan commission would be a use consistent with existing zoning.

One who seeks a variance, claiming his property cannot reasonably be used in a manner consistent with existing zoning, must establish that a use which might be authorized by the city plan commission is not an available use. That can be established by proof that an application was made to, and rejected by, the city plan commission, or by proof that, even if the city plan commission were to issue the necessary authorization, the property could not reasonably be put to the authorized use. Here there is no evidence either of an application to the city plan commission or that no use that might be so authorized is reasonable.

Turning to the findings of, and the record compiled by, the board, we agree that unavailability of financing attributable to the site and its proposed use as a single-family dwelling or duplex and not caused by temporary mortgage market conditions would be relevant to the question whether the property could reasonably be used for single-family or duplex purposes. Crawford, Michigan Zoning and Planning, § 8.35. While we recognize the board might be justified in acting on its expert knowledge, as long as that knowledge is made a part of the record (*Tireman-Joy-Chicago Improvement Association* v. *Chernick, supra,* p 218), we do not think a board member's statement of opinion that financing would be "most difficult" to obtain, without any showing on the record of either the member's qualifications to express that opinion or a factual basis therefor, is sufficient to support a finding that it was "unlikely" that such financing could be obtained.

Examination of the Detroit zoning ordinance makes it apparent that miles of property abutting Southfield are zoned R1 (2-1/2-story, 1-family dwellings) or R2. Where the alleged hardship, here adjacency to a street carrying a large volume of fast-moving traffic, affects a large number of property owners in precisely the same manner, the board is without power to grant relief on that ground of alleged hardship. Relief on that ground may only be allowed by the governing legislative body (the common council of the city of Detroit) or, if the necessary showing can be made, by the courts. See authorities and discussion in *Puritan-Greenfield Improvement Association* v. *Leo* (1967), 7 Mich App 659, 670–673.

The only evidence presented in regard to the economics of the land was the statement that the land had been offered for sale for more than 2 years. This is insufficient. Such evidence to be meaningful should show the price at which the land was offered, and the extent and diligence of the efforts to sell the property. A possible explanation for a failure to have obtained a buyer is too high an asking price. See *Forrest* v. *Evershed* (1959), 7 NY2d 256, 261 (196 NYS2d 958, 164 NE2d 841).

All we are left with in this case is the bare assertion that, in the opinion of a board member, it is unlikely anyone would buy the property to erect either a single or 2-family dwelling. Neither the board member's qualifications to express that opinion nor the factual basis therefor appear on the record. His opinions were not expressed at a scheduled *hearing,* but at a board meeting held after a scheduled hearing at which the board announced to those present that the matter had been submitted.

In our opinion, the zoning appeals board's finding of unnecessary hardship[11] was not supported by substantial evidence. Although in another case we might decline to remand for the taking of further evidence, we are persuaded that in this case the interests of justice require remand to the board to permit the defendant to present his claim on the merits in the light of our opinions in *Puritan-Greenfield Improvement Association* v. *Leo, supra,* and in this case.

## IV.

Plaintiffs' complaint also sought to enjoin the construction of the apartment building on the ground that such construction would violate a restrictive covenant affecting the land. The circuit judge ruled that the restriction to "residence use" did not prevent the construction of an apartment since an apartment is a residence, citing *Miller* v. *Ettinger* (1926), 235 Mich 527, 529.[12]

The restriction here before us reads in relevant part:

"Nothing but *a* residence  *  *  *  shall be erected thereon. The residence shall cost not less than $1,500.00.[13]  *  *  *  The projections forming a part of the body of the house are construed as a part of the house.  *  *  *  Porches and steps are not construed as a part of the house." (Emphasis supplied.)

In *Killian* v. *Goodman* (1924), 229 Mich 393, 395, the Court concluded that a 33-family apartment

---

[11] The phrase "practical difficulty" has been regarded as applicable only when an area or dimension variance is sought. *Puritan-Greenfield Improvement Association* v. *Leo, supra,* p 667. See, also, *Indian Village Manor Company* v. *Detroit, supra,* p 684.

[12] The restriction in *Miller* v. *Ettinger* read: "Said lots shall be used solely for residence purposes." (p 528.)

[13] Compare *Bassett Building Company* v. *Jehovah Evangelical Lutheran Church* (1963), 371 Mich 459, 462.

house could not be built on land restricted to use as "a residence":

"The letter 'A' has some significance before the word 'residence'. A horse means one horse, a single horse; it does not mean a team or 33 horses. So a residence means one residence, a single residence, not 33 residences. Giving to the words used in these restrictions their ordinary commonly understood meaning, 'a dwelling house' means one single dwelling house and 'a residence' means one single residence. The terms as used in the restrictions are synonymous."

It is unnecessary, in order to clear the way for a redetermination by the board of zoning appeals on remand, for us to decide whether the deed restriction prevents construction of the contemplated apartment building. The existence of a valid restriction would not be a reason for denying a use variance to which the defendant would otherwise be entitled. *Michener Appeal,* 382 Pa 401 (115 A2d 367). A complete record might disclose that the proposed apartment building will be constructed in a manner consistent with the requirements of the restriction. Moreover, the decision of the board of zoning appeals on remand may make it unnecessary for us to decide the question. There being no present need to decide the restriction question, we refrain from doing so.

Reversed and remanded to the board of zoning appeals. Costs to appellant.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.