# STATE OF MICHIGAN

# COURT OF APPEALS

SHENELLE MILLER-WEBB,

        Plaintiff-Appellant,

v

GENESEE COUNTY, ANITA GALAJDA, and
DONITA PIKES,

        Defendants-Appellees.

UNPUBLISHED
April 19, 2016

No.   325593
Genesee Circuit Court
LC No.   13-100988-CD

Before:  O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Shenelle Miller-Webb, appeals as of right the trial court's November 24, 2014 order granting summary disposition in favor of defendants, Genesee County, Anita Galajda, and Donita Pikes.  On appeal, she challenges that order as well as the trial court's April 14, 2014 order granting partial summary disposition in favor of defendants.  We affirm.

## I.  BACKGROUND

This wrongful termination lawsuit arises out of plaintiff's employment with defendant Genesee County.  Since 2001, plaintiff, an African-American woman, has been employed with Genesee County in various clerical positions.  In 2012, plaintiff applied for and was appointed to a Human Resources (HR) Representative position with Genesee County.  Defendant Donita Pikes, Genesee County's HR Director, hired plaintiff for that position.  After plaintiff was hired, deposition testimony reflects, Pikes received "grief" about promoting plaintiff from defendant Anita Galajda, the Assistant HR Director.  Deposition testimony also indicated that a County Commissioner suspected that plaintiff's promotion was the product of race-based preferential treatment and requested that the decision be reviewed.  The fact that plaintiff was qualified for the position is undisputed for purposes of this appeal.

More than a year after plaintiff was hired, Jeanne Thick, the Department of Veterans Services (DVS) Director, informed Galajda that plaintiff had disclosed confidential information to Monica Kannai, another DVS employee, regarding a third DVS employee's intent to transfer from DVS.  Thick became upset about the disclosure, and Galajda began an investigation into the matter.  During the investigation, Galajda interviewed Thick and Kannai, each of whom provided written statements about the incident that indicated that plaintiff had disclosed the confidential information at issue.  Plaintiff denied disclosing the information.  After completing

-1-

the investigation, it was determined that plaintiff disclosed the confidential information while in her position as an HR Representative and that she was dishonest about that disclosure. After discussing the matter with Galajda and reviewing the written statements of Thick and Kannai, Pikes decided to terminate plaintiff's employment.

Plaintiff challenged the termination, asserting that she was discharged without just cause, by pursuing the five-step grievance procedure set forth in Genesee County's Personnel Policy Manual. Plaintiff completed the first, second, third, and fourth steps of the grievance procedure, and Genesee County denied her grievance at every step. She did not, however, pursue the final step of submitting the dispute to arbitration. Instead, plaintiff filed this lawsuit, alleging that she was wrongfully discharged in violation of her employment contract, in violation of an implied contract, and against public policy and that her discharge was the result of race-based discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.* [1] The trial court granted summary disposition on plaintiff's wrongful discharge, contract, and public policy claims, concluding that plaintiff was required to pursue her claims through arbitration according to the grievance procedure in the Personnel Policy Manual. After the parties conducted discovery, the trial court also granted summary disposition on plaintiff's claims under the Elliot-Larsen Civil Rights Act, concluding that plaintiff failed to establish that race was a factor in the decision to terminate her employment. This appeal followed.

## II. ANALYSIS

### A. WRONGFUL DISCHARGE CLAIMS

On appeal, plaintiff first argues that the trial court erred in granting summary disposition on her wrongful discharge, contract, and public policy claims because the arbitration provision in the Personnel Policy Manual was not contractually binding. While we agree with plaintiff's argument, we nevertheless affirm the trial court's grant of summary disposition for a different reason. *Reisman v Regents of Wayne State Univ*, 188 Mich App 526, 530; 470 NW2d 678 (1991) ("Where a trial court reaches the correct result for the wrong reason, the result will not be disturbed on appeal.").

At the outset, we note that plaintiff never argued that the Personnel Policy Manual did not contractually bind her to arbitrate her claims before the trial court, nor did she present § 1.4 of the Manual, which she relies entirely upon to support her argument on appeal.[2] In fact, it is

---

[1] Plaintiff's complaint also included two additional counts, "Procedural Due Process" and "Disparate Treatment," but those counts were dismissed earlier in the case and are not at issue in this appeal.

[2] The only section of the Personnel Policy Manual presented to the trial court was § 13.1, which sets forth Genesee County's grievance procedure. Plaintiff sought to expand the record to include the Personnel Policy Manual in its entirety on appeal by filing a motion with this Court, MCR 7.216(A)(4), but her motion was denied. *Miller-Webb v Genesee Co*, unpublished order of the Court of Appeals, entered April 9, 2015 (Docket No. 325593).

apparent that neither party disputed the existence of an employment contract between plaintiff and Genesee County before the trial court, presumably because plaintiff's claims of wrongful discharge, breach of contract, and discharge in violation of public policy are predicated on plaintiff's right to just-cause employment, which plaintiff claims arose from her employment relationship governed by the Personnel Policy Manual. The question on appeal, therefore, is based on matters that were not presented before the trial court and not properly supported by the trial court record. Plaintiff's argument on appeal ignores the longstanding rule that a party may not "add to the record something not considered by the trier of fact or change the nature of the inquiry on appeal." MCR 7.210(A); *Lorland Civic Ass'n v DiMatteo*, 10 Mich App 129, 137-138; 157 NW2d 1 (1968).

Thus, plaintiff's claim is clearly not preserved for our review. *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987). However, "the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when necessary to a proper determination of a case[.]" *Klooster v City of Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011) (citation and internal quotation marks omitted). "The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just" "permit amendments, corrections, or additions to the transcript or record[.]" MCR 7.216(A)(4). Because we believe resolution of whether the parties had a binding arbitration agreement is necessary for a proper determination of this case, we deem it appropriate to consider whether the Personnel Policy Manual contractually binds plaintiff to arbitrate her claims and exercise our discretion to decide the issue.

We review "a trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(7) de novo to determine whether the moving party was entitled to judgment as a matter of law." *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000). "In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiff's well-pleaded allegations and construes them in the plaintiff's favor." *Id*. This Court considers "the pleadings, affidavits, depositions, admissions, and documentary evidence filed or submitted by the parties to determine whether a genuine issue of material fact exists." *Id*. "The existence of an arbitration agreement and enforceability of its terms are judicial questions" that we review de novo. *Id*.

"Employers may provide a procedure for resolution of disputes concerning the discharge of employees." *Dahlman v Oakland Univ*, 172 Mich App 502, 505; 432 NW2d 304 (1988). However, "an arbitration provision is unenforceable if it is not a binding contract." *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405, 413; 550 NW2d 243 (1996); see also *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005); *Stewart v Fairlane Community Mental Health Ctr (On Remand)*, 225 Mich App 410, 420-421; 571 NW2d 542 (1997). In accordance with *Heurtebise*, 452 Mich 413-414, we conclude that plaintiff was not contractually bound to arbitrate her claims pursuant to the grievance procedure of the Personnel Policy Manual. In *Heurtebise*, "the Court held that the terms of the employment manual that the plaintiff signed, which included an arbitration provision, were unenforceable because the language of the manual demonstrated that defendant employer did not intend to be bound by the

-3-

manual." *Hicks*, 267 Mich App at 84, citing *Heurtebise*, 452 Mich at 413-414. Like in *Heurtebise*, the arbitration provision at issue here is part of the Personnel Policy Manual, and the introductory section of the Manual expressly states that it is not an employment contract.[3] 452 Mich at 413-414; *Hicks*, 267 Mich App at 84-85. The Personnel Policy Manual's clear and unambiguous language demonstrates that Genesee County, like the employer in *Heurtebise*, did not intend to be contractually bound to any provision contained in the Manual, and, therefore, it does not create an enforceable arbitration agreement. *Heurtebise*, 452 Mich at 414; see also *Stewart*, 225 Mich App at 420-421. Accordingly, in the absence of a binding contract, Genesee County cannot enforce the arbitration provision and is not entitled to summary disposition on the basis that plaintiff was required to pursue arbitration of these claims according to the grievance procedure of the Personnel Policy Manual. *Heurtebise*, 452 Mich at 414; *Stewart*, 225 Mich App at 420. Summary disposition of plaintiff's claims on that basis was, therefore, improper.

Nevertheless, we conclude that summary disposition on plaintiff's wrongful discharge, contract, and public policy claims arising out of the alleged just-cause employment relationship is still appropriate because our conclusion that the County did not intend to be bound by the provisions of the Personnel Policy Manual is fatal to these claims. These claims, as pled by plaintiff, sound entirely in contract, *Phillips v Butterball Farms Co (After Second Remand)*, 448 Mich 239, 246, n 15; 531 NW2d 144 (1995), and are predicated on the existence of a just-cause employment relationship as established by Genesee County's policies and procedures governed by the Personnel Policy Manual. Given plaintiff's position and our conclusion that the Personnel Policy Manual is not a binding employment contract, she cannot now reasonably claim that the Manual's discharge-for-just-cause policy is contractually binding or that she had a legitimate expectation that the just-cause discharge provisions of the Manual constituted a promise of just-cause employment. See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 163-167; 579 NW2d 906 (1998). Relatedly, the record is void of any support for plaintiff's public-policy claim, and this is especially true in light of the reasons, i.e., breach of confidentiality and dishonesty, that were articulated to support the termination of her employment. Thus, plaintiff's claims predicated on the existence of a just-cause employment relationship fail as a matter of law.

---

[3] The Personnel Policy Manual is clear in this regard:

1.4 <u>Policy Only; Not a Contract</u>

This Manual is a statement of Board established policies and procedures. It is not an employment contract, nor part of one. No provision or collection of provisions in this Manual, including without limitation all provisions in their entirety, is or are an offer of a contract or of a contractual right, nor does any provision or group of provisions, or the Manual in its entirety, constitute a contract, or part of a contract or a contractual right.

## B. VIOLATION OF ELLIOT-LARSEN CIVIL RIGHTS ACT

Plaintiff also argues on appeal that the trial court erred in granting summary disposition on her claims of race-based employment discrimination under Michigan's Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Although defendants moved for summary disposition under MCR 2.116(C)(8) and (10), we analyze the motion under MCR 2.116(C)(10) because the parties and the trial court relied on evidence beyond the parties' pleadings. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001); *Maiden*, 461 Mich at 120. In analyzing a motion brought under (C)(10), we consider the affidavits, depositions, admissions, and other documentary evidence submitted by the parties, in the light most favorable to the nonmoving party, to determine whether there exists a genuine issue of material fact for trial. *Maiden*, 461 Mich at 120. The motion should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 309-310; 660 NW2d 351 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Conjecture and speculation are not sufficient to meet a nonmoving party's burden of establishing a genuine issue of material fact. *Libralter Plastics Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

Michigan's Elliot-Larsen Civil Rights Act clearly prohibits employers from discriminating on the basis of race.[4] Plaintiffs can show racial discrimination under MCL 37.2202 through direct or indirect evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). "[D]irect evidence [i]s 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Id*. at 462. If the plaintiff succeeds in showing direct evidence of discrimination, he "can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Id*., citing *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539-540; 620 NW2d 836 (2001).

---

[4] The Elliot-Larsen Civil Rights Act, MCL 37.2202(1)(a), provides in relevant part:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Where there is no direct evidence of unlawful discrimination, a plaintiff may establish a prima facie case of discrimination based on circumstantial evidence. *Lytle*, 458 Mich at 172-173. To move forward on a claim based on circumstantial evidence, our Courts have adopted the burden-shifting analytical framework of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Hazle*, 464 Mich at 462; *Lytle*, 458 Mich at 172-175. Under this approach, "plaintiff must prove by a preponderance of the evidence that (1) she was a member of the protected class; (2) she suffered an adverse employment action [including] discharge; (3) she was qualified for the position; but (4) she was discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle*, 458 Mich at 172-173. Once she has done so, "a presumption of discrimination arises." *Id*. at 173. "[A] prima facie case of race discrimination can be made by showing either intentional discrimination or disparate treatment." *Reisman*, 188 Mich App at 538, citing *Singal v General Motors Corp*, 179 Mich App 497, 502; 447 NW2d 152 (1989). To prove the first, "the plaintiff must show . . . that the person who discharged him was predisposed to discriminate against persons in the affected class and actually acted on that disposition in discharging him." *Reisman*, 188 Mich App at 538. To prove the second, "the plaintiff must show that the plaintiff was a member of the class entitled to protection under the act and that he was treated differently than persons of a different class for the same or similar conduct." *Id*.

Once a plaintiff has established a prima facie case of discrimination, "[t]he burden then shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for plaintiff's termination to overcome and dispose of this presumption." *Lytle*, 458 Mich at 173 (citation omitted). He or she must clearly present, through the introduction of admissible evidence, the reasons for the adverse action at issue. *Id*. at 173-174. "Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption [raised by a prima facie case] drops away, and the burden of proof shifts back to plaintiff." *Id*. at 174. The plaintiff must "show, by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id*. At this stage, "disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Id*. at 175.

After reviewing the record, we discern no genuine issue of material fact as it relates to the fact that the termination of plaintiff's employment was for nondiscriminatory reasons. Plaintiff presented no direct evidence of discrimination and did not set forth a prima facie case of racial discrimination. Plaintiff was a member of a protected class, was qualified for the HR Representative position, and her employment was terminated. Thus, to establish a claim under the Elliot-Larsen Civil Rights Act, plaintiff was required to show that she was discharged under circumstances giving rise to an inference of unlawful discrimination. *Lytle*, 458 Mich at 172-173. To establish unlawful discrimination, plaintiff must demonstrate either intentional discrimination or disparate treatment. *Reisman*, 188 Mich App at 538. She has not done so.

First, plaintiff has failed to demonstrate intentional discrimination. Pikes, who made the decision to terminate plaintiff's employment, also hired plaintiff, and Michigan courts have recognized that, where the same individual both hired and terminated a plaintiff, there exists a strong inference that discrimination was not a determining factor for the adverse employment

action. *Town v Mich Bell Tel Co*, 455 Mich 688, 700-701; 568 NW2d 64 (1997). Plaintiff has not presented any evidence suggesting that Pikes was predisposed to discriminate against African-Americans or that she acted on this predisposition in terminating plaintiff to overcome this inference. *Reisman*, 188 Mich App at 538. The only evidence of racial references in the record include statements from other employees, including, for example, Galajda, who suggested at one point that she believed that plaintiff received preferential treatment in the hiring process because of her race; testimony that Pikes received "grief" after promoting plaintiff; and testimony that Pikes had previously warned plaintiff that Galajda was looking to write her up. Plaintiff argues that, from this evidence alone, it can be inferred that Pikes terminated plaintiff's employment in an effort to take "the heat off" Pikes because she was receiving "grief" after promoting plaintiff. The record does not support this assertion. Further, even if plaintiff received preferential treatment in the hiring process, there is no evidence that Pikes had any racial animus toward plaintiff. Indeed, there is no evidence that Pikes ever expressed a desire to take adverse employment action (or any other type of action for that matter) against plaintiff because of her race or that other individuals sought to terminate plaintiff's employment or pressured Pikes to do so for similar reasons. Without more, it is mere speculation to infer that these circumstances created racial animus on the part of Pikes such that she became predisposed to discriminate against plaintiff or that Pikes acted on that predisposition when she terminated plaintiff over one year after the promotion. *Reisman*, 188 Mich App at 538.

The only other evidence plaintiff proffered to support a claim of intentional discrimination is the testimony of a County Commissioner, who testified that he believed plaintiff's termination was racially motivated. However, his subjective belief, without more, constitutes mere speculation and is not sufficient evidence to overcome summary disposition, especially when he was not involved in the decision to terminate plaintiff's employment and did not provide any specific facts indicating racial animus on the part of Pikes, the decision-maker, to support it. *Libralter Plastics Inc*, 199 Mich App at 486 (holding that mere speculation is not sufficient to defeat a motion for summary disposition). See also *Hopson v DaimlerChrysler Corp*, 306 F3d 427, 433 (CA 6, 2002) (holding that the opinion of a manager that race was a factor in the decision to deny the plaintiff a promotion did not require the conclusion that unlawful discrimination was a motivating factor where the manager was not involved in the decision and did not reveal the basis for his opinion). On this evidence, we conclude that plaintiff failed to bring forth sufficient evidence that Pikes, the person responsible for terminating plaintiff's employment, demonstrated any discriminatory animus toward plaintiff as an African-American, and, thus, she failed to establish a prima facie case of intentional discrimination based on race. *Reisman*, 188 Mich App at 538.

We further conclude that plaintiff has not proven disparate treatment sufficient to establish a prima facie case of discrimination. To create an inference of disparate treatment, plaintiff must prove that she and other employees were similarly situated, i.e., "all of the relevant aspects" of her employment situation were "nearly identical" to another employee's employment situation. *Town*, 455 Mich at 700; see also *Lytle*, 458 Mich at 178-179. Plaintiff has proffered no evidence identifying any other employee who was similarly situated to her, i.e., an HR Representative accused of breaching confidentiality and dishonesty, but treated differently. Plaintiff testified that, although the HR Department had a reputation for "leaking" information all the time, she admittedly was unaware of specifically what other information had been leaked, the source of those leaks, and whether any non-African-American employees that leaked

confidential information or lied to a supervisor were disciplined. Further, although testimony indicated that a Caucasian HR employee made an error regarding a Commissioner's income tax withholding without recourse, the error did not constitute a breach of confidentiality inherent in HR positions, and the employee admitted making the mistake. Likewise, testimony by a County Commissioner also indicated that, in the past, other individuals had disclosed information from HR without recourse, but his testimony did not provide any specific details, such as the nature of the alleged disclosures, when those alleged disclosures occurred, and whether Pikes was the Director at that time. On this record, there is no evidence, beyond mere speculation that plaintiff was treated differently than similarly situated employees of a different class for the same or similar conduct as is required to prove disparate treatment. *Town*, 455 Mich at 700. And, as stated above, mere speculation is not sufficient to defeat a motion for summary disposition. *Libralter Plastics*, 199 Mich App at 486. Accordingly, the record also does not support an inference of unlawful discrimination based on disparate treatment. See *Reisman*, 188 Mich App at 538.

Furthermore, even if plaintiff had presented sufficient evidence to prove a prima facie case of discrimination, defendants proffered a legitimate, nondiscriminatory reason for her termination, i.e., her breach of the confidentiality required of her HR Representative position by disclosing information to an employee about another employee's transfer and her dishonesty about the breach in violation of Genesee County's work rules. *Lytle*, 458 Mich at 173. By proffering this legitimate, nondiscriminatory reason for plaintiff's termination, defendants rebutted any presumption raised by a prima facie case. *Id*. at 173-174. The burden of proof then shifted back to plaintiff to establish, "by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id*. at 174. "[D]isproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Id*. at 175. Plaintiff has failed to meet this burden.

There is no evidence that Pikes, who made the decision to terminate plaintiff's employment, had any racial animus toward plaintiff or that Pikes terminated her employment for any reason other than plaintiff's breach of confidentiality and dishonesty about that breach. Instead, the evidence indicates that Pikes decided to terminate plaintiff's employment because of her wrongful conduct and not because of any racial animus. Galajda, who conducted the investigation regarding the breach of confidentiality, presented Pikes with the results of the investigation, including the independent written statements of Thick and Kannai. Pikes had no reason to disbelieve Galajda and did not believe that Thick would fabricate the incident, and the record does not reflect that Galajda pressured Pikes to terminate plaintiff's employment. After Pikes reviewed the written statements, which she found to be credible, and discussed the issue with Galajda, Pikes decided to terminate plaintiff's employment because of her conduct in violation of Genesee County's work rules. Because Thick and Kannai's testimony regarding plaintiff's breach of confidentiality and their oral and written statements during the investigation support the proffered reason for termination, it does not appear to be untrue. Even so, "an employer's 'honest belief' in a proffered reason for a challenged employment action will be upheld against a charge of pretext, even if this belief cannot be proven true, so long as the employer can identify 'particularized facts' upon which it relied in forming this belief." *Nizami v Pfizer, Inc*, 107 F Supp 2d 791, 803-804 (ED Mich, 2000) (citation omitted). Defendants have

met this standard by producing particularized facts regarding plaintiff's conduct in breaching confidentiality and being dishonest. Moreover, plaintiff has not established that her termination was, in fact, a pretext for discrimination because there is no evidence that Pikes had any racial animus toward plaintiff. Accordingly, we conclude that plaintiff has failed to raise a triable issue that discriminatory animus was a motivating factor underlying her termination. *Lytle*, 458 Mich at 175.

### III. CONCLUSION

In sum, we conclude that summary disposition on plaintiff's wrongful discharge, contract, and public policy claims was appropriate pursuant to MCR 2.116(C)(7) and that summary disposition on plaintiff's claims under the Elliot-Larsen Civil Rights Act was also appropriate pursuant to MCR 2.116(C)(10). We therefore reject plaintiff's arguments as it relates to both summary disposition orders and affirm the trial court's November 24, 2014 order granting summary disposition in full to defendants.

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.


/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien